ARTHUR G. LOGAN and AVERIL LOGAN, Petitioners Below, Appellants, v. E. HOBSON DAVIS, State Tax Commissioner, Respondent Below, Appellee.

*(July* 20, 1962.)

LYNCH, J., sitting.

*Arthur G. Logan* (*C. Edward Duffy*, with him on the brief) for Petitioners.

*E. Norman Veasy*, Deputy Attorney General, for State Tax Commissioner.

Superior Court for New Castle County, No. 832, Civil Action, 1961.

LYNCH, J.:

The Tax Statute, so far as it relates to any limitation of time on the power of the State Tax Commissioner to make assessments of additional taxes due, is found in 30 Del. C., § 1181, and it provides:

"§ 1181. Examination of returns; assessment of additional taxes

"(a) As soon as practicable after the return is filed, the Tax Department shall examine it and compute the tax and the amount so computed shall be the tax.

"(b) If the Tax Department discovers from the examination of the return or otherwise that tax on the income of any taxable, or any portion thereof, has not been assessed, it may, at any time, within three years after the time when the return was due, or if not filed on the due date within three years from the date the return was filed, assess the tax on the same and give notice to the taxable of such assessment and at the termination of 30 days, the additional tax determined by the Tax Department shall be due and payable unless the taxable or his agent or attorney shall have within said 30 days, filed complaint or appeal in writing over his signature from the assessment of the Tax Commissioner and requested a hearing before the Tax Board. *The limitation of three years to the assessment of such tax shall not apply to the assessment of additional taxes upon returns* which are fraudulent or [in which] *the income thereon* [is] *grossly understated* or in cases where no return has been filed." (Emphasis supplied.)

■ Generally speaking, the State Tax Commissioner cannot make additional assessments of tax liability after the expiration of three years after the time when the return was due. If, however, the return was not filed on the due date then an assessment may be made "within three years from the date the return was filed." This limitation of power does not apply to—

(a) Returns which are fraudulent.

(b) Returns in which the income is grossly understated.

(c) Cases where no return is filed.

■ Mr. and Mrs. Logan (referred to hereafter as "Petitioners"[1]) filed their Delaware State Income Tax Return

---

[1]The State Tax Department or the Commissioner will be referred to as "Commissioner".

for the year 1954 on April 27, 1955—three days before the due date of the return, which was April 30, 1955. The return showed Gross Total Income of $53,129.02 and a tax liability of $891.72.

Petitioners made no entry on line 6 of the return, pertaining to income from "capital gains from real estate, stocks, bonds, etc. (from Schedule C)".

On the reverse side of the return—where Schedule C appears—the Petitioners set forth:

"Tax payer's only capital gains during 1954 were from interstate transactions not taxable by the State of Delaware. See: *Freeman v. Hewit*, 329 U. S. 249 [67 S. Ct. 274], 91 L. ed. [265] and *Indiana* [*Department of State Revenue, Gross Income Tax Division, Inc.*] *v. Nebeker* (Feb. 7, 1955), [348] U. S. [933] [75 S. Ct. 354], 99 L. ed. [731] 275 (Adv. Sheets)."

The amount of such capital gains was not set forth any place on the return.

Petitioners had taken the same position in connection with their 1955 and 1956 returns as they had taken with respect to their 1954 return. The Commissioner wrote Petitioners on October 16, 1958,[2] stating that their returns for the years 1954, 1955 and 1956 had not included the income from their capital gains and it was necessary to have this so that their tax could be computed and assessed.

Petitioners wrote to the Commissioner on November 14, 1958, sending supplemental returns for the years 1955 and 1956, including the amounts of Petitioners' capital gains in those years and stated in their letter:

---

[2] About five and one half months after the due date of the return and after the Statute of Limitations may have run.

"As you know, when I filed the returns for 1954, 1955 and 1956, I was litigating with the State Tax Department the question of whether my capital gains, including distributions on my Missouri Kansas Pipe Line Co. stock, could be taxed, as they were derived from transactions in Interstate Commerce. I stated in SCHEDULE C on the returns for each of said years the following: 'Taxpayer's only capital gains during * * * were from interstate transactions not taxable by the State of Delaware. See *Freeman v. Hewit*, 329 U. S. 249 [67 S. Ct. 274], 91 L. ed. 265 and *Indiana [Department of State Revenue Gross Income Tax Division, Inc.] v. Nebeker* (Feb. 7, 1955) 348 U. S. 933 [75 S. Ct. 354], 99 L. ed. 731.'

"I have not filed a supplemental return for 1954, as you requested because the three-year period provided by 30 *Del. Code*, § 1181 for assessing me has passed. As an assessment could not be made I see no reason for filing a supplemental return.

"I trust you will agree with me that it is unnecessary to file a supplemental return for 1954."

The Commissioner wrote to Mr. Logan on December 16, 1958, requesting that the amount of the 1954 capital gains be reported. Prior to that date the Commissioner had never requested that Petitioners advise the amount of their 1954 capital gains or any information with respect thereto. Petitioners supplied the requested information on January 9, 1959, but insist they did so without waiving any of their rights.

A deficiency assessment was made on January 21, 1959, with the resulting following additions to net income:

"Capital gains—See schedule submitted by taxpayer, received January 9, 1959 . . . . . . . . . . . .  103,653.75

"Alimony disallowed—deduction not substantiated  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7,200.00"[3]
(Stipulation Par. 14; R 90; Exhibit A to Petition; R 6)

The amount of the Petitioners' capital gains for 1954 totaled $103,653.75, which is the amount of the capital gain figure that Petitioners had reported on their joint United States Income Tax Return for the year 1954 on Form 1040, filed in the Office of the Delaware District Director, United States Post Office Building, Wilmington, Delaware, on January 15, 1955.

As hereinafter explained, this 1954 Federal Tax Return was inspected, examined and copied by the Commissioner. The figure noted was the same information furnished to the Commissioner by Mr. Logan's letter, dated January 8, 1959, received by the Commissioner on January 9, 1959.

On February 19, 1959 Petitioners appealed from the Commissioner's determination assessing the additional tax, penalties, and interest for the calendar year 1954 (R 1-6).

The Commissioner's contention was and is that that part in a tolling provision of 30 *Del. C.*, § 1181(b), which reads as follows, is controlling:

"The limitation of three years to the assessment of such tax shall not apply to the assessment of additional taxes upon returns which * * * or [in which] the income thereon [is] grossly understated * * *."

The Petitioners argue that this cited portion of the statute is not applicable since the Commissioner always had or could get the information relating to Petitioners' capital gains from another source, from the records in the Office of the District Director of Internal Revenue Service, United States Post Office Building, Wilmington, Delaware (a distance, I might say, of about two blocks from the Office of the Commissioner).

Petitioners' argument is about like this.

1. On *January 15, 1955* Petitioners herein filed a joint United States Individual Income Tax Return for the year 1954

on Form 1040 in the Office of the Delaware District Director, United States Post Office Building, Wilmington, Delaware. This return scheduled and set forth the amount of the capital gains of Petitioners for the year 1954;

2. That since 1940 a practice has been in effect of permitting full-time auditors from the Tax Department to inspect and copy various individual, partnership and fiduciary returns filed with the Director of Internal Revenue at Wilmington, Delaware.

Petitioners then argue from this that after the Petitioners' United States Individual Income Tax Return for 1954 was filed, on January 15, 1955, the Commissioner obtained permission from the Commissioner of Internal Revenue, under the foregoing reciprocal arrangement, to inspect and copy Petitioners' Federal return; and from such return ascertained or could have ascertained[4] the amount of Petitioners' capital gains for the year 1954.

Consequently, say the Petitioners, this figure was a part of the Commissioner's records pertaining to Petitioners' 1954 Delaware Income Tax Return within the three year period of limitations provided by 30 *Del. C.*, § 1181, for 1954 returns.

Petitioners contend in light of this that the Commissioner should not be allowed to take advantage of the tolling provision and make the assessment which is in issue.

Petitioners point to Schedule C of Petitioners' return, see page 597, *supra,* and argue that this was "adequate dis-

---

[3]There may be some question as to the right of the Commissioner to disallow this item after the expiration of the statutory period since the return, as filed, disclosed Petitioners' claim to the deduction; it is doubtful if Commissioner's action in finding no substantiation for the deduction can be considered as an understatement. Since this point was neither briefed or argued I pass no judgment with respect to it.

[4]I am accepting Petitioners' contention that the Commissioner had this information available to him, and probably had the information; it cannot affect Petitioner's tax liability as is noted hereafter.

closure" to the Commissioner of the fact that Petitioners had capital gains and this enabled him to have computed the amount of additional taxes due by Petitioners within the three year period from the information received from the Federal Tax Authorities.

Petitioners point (1) to 30 *Del. C.*, § 1181(a) and argue this places a duty upon the Commissioner *"As soon as practicable*[5] after the return is filed" to *"examine it* and compute the tax * * *.*"; (2) that 30 *Del. C.*, § 1181(b) provides that:

*"If the Tax Department discovers from the examination of the return or otherwise that tax* on the income of any taxable, or any portion thereof, *has not been assessed, it may*, at any time within three years after the time when the return was due, or if not filed on the due date within three years from the date the return was filed, *assess the tax* on the same * * *."*

The heart of Petitioners' argument seems to be that the above cited provisions of our Tax Statute place a clear duty on the Commissioner (1) to examine a return promptly and (2) to make assessments within the three year period, *based not only upon what a return shows, but on any information the Commissioner may discover from any other source;* that the statement in their return, see page 597, *supra*, clearly put the Commissioner *on notice* that Petitioners had capital gains for 1954; that with such notice the Commissioner had the duty, right and ample power under 30 *Del. C.*, § 368, to promptly obtain, within the three year period, from Petitioners or the Federal Tax Authorities the amount of their capital gains for 1954, and having failed to do either the Commissioner could not make the assessment.

The Commissioner, on the other hand, contends that regardless of what information came to the knowledge of the Commissioner through the existing reciprocal arrangement

---

[5] All emphasis in this paragraph are supplied.

between the Commissioner and the Federal Tax Authorities, or was available, the amount of Petitioners' capital gains "could not be determined from [Petitioners'] 1954 State return"; that the statutory exclusion from the operation of the statute of limitations on the Commissioner's power of making assessments "depends upon what is set forth in the return itself", and not what the Commissioner may have known or could have learned or found out apart from what was set forth in the return.

The entire thrust of the Commissioner's argument is that if the exclusion set out in the statute applies, there is no statute of limitations at all with respect to the return filed by Petitioners on April 27, 1955, since it did not set forth the amount of the Petitioners' capital gains; that if such return was amended by the Petitioners' letter of January 9, 1959, then the three year period of limitation started to run from that date.

The Commissioner, continuing his argument, contends that the statement in Petitioners' return as to capital gains— see page 597, *supra*—defies computation of any tax thereon; that no matter how zealously the Commissioner examined that return no tax could ever have been computed and/or assessed therefrom on the amount of capital gains, since this income figure was not given on the face of or within the return.

The Commissioner further contends that Petitioners' attempt to read subsections (a) and (b) of Section 1181 together cannot change the fact that the duty imposed in subsection (a) is related solely to the returns and that subsection (b) does not either broaden or limit this duty; and the conclusion remains inescapable that Petitioners' income was grossly understated from examination of the return. Since the return itself determines the applicability or inapplicability of the statute of limitations, the mere allusion to capital gains

in Petitioners' return cannot save them from the assessment which the Commissioner made.

Petitioners cite and rely almost entirely on the decision of the Supreme Court of the United States in *Colony, Inc. v. Commissioner of Internal Revenue*, 357 U. S. 28, 78 S. Ct. 1033, 2 L. Ed. 2d 1119 (1958), to support them on this appeal.

Sympathetic as the Court feels towards the Petitioners —believing that the equities are almost entirely with them and that the Commissioner, or his predecessors, had the information from which the tax could have been computed— the Court cannot decide this case in their favor on the basis of that authority.

This case at bar is readily distinguishable from the *Colony* case because of the differences in the statutory language and the factual situation considered in the cited case.

The Federal Tax Statute [26 *U. S. C. A.* § 275(c)] depends on *omissions* from gross income by the taxpayer of items that should be reported in order to have the five year statute of limitations apply rather than the three year statute. Our Delaware Statute, on the other hand, is by the very language used in the statute—expressly dependent upon whether the taxapayer's return shows any understatement of gross income. An understatement may be the result of an omission to list income or it may be a misstatement of income; it can be any one of many other causes—as long as there is an understatement of income. It is clear that the Delaware Statute, being based on a specified exclusion from the benefit of the general statute of limitations, is much broader than the Federal Statute.

Consideration of a statement made by Mr. Justice Harlan, 357 U. S. at page 33, 78 S. Ct. at page 1035, 1036, 2 L. Ed. 2d 1123, shows that the majority opinion recognized

it was dealing with a question of statutory construction, else why this statement—

"Although we are inclined to think that the statute on its face lends itself more plausibly to the taxpayer's interpretation, it cannot be said that the language is unambiguous. * * *"

Having noted there was an "ambiguity" the Court then proceeded to resolve it by considering the legislative history of the section under construction.

The Court noted that a Sub-Committee of the House Ways and Means Committee had proposed (357 U. S. at pages 33 and 34, 78 S. Ct. at page 1036, 2 L. Ed. 2d 1123):

" '* * * that the limitation period on assessment should also not apply to certain cases where the taxpayer has understated his gross income on his return by a large amount, even though fraud with intent to evade tax cannot be established. It is, therefore, recommended that the statute of limitations shall not apply where the taxpayer has failed to disclose in his return an amount of gross income in excess of 25 percent of the amount of the gross income stated in the return. *The Government should not be penalized when a taxpayer is so negligent as to leave out items of such magnitude from his return.*' * * *" (Emphasis supplied.)

The Court proceeded to observe (357 U. S. at page 34, 78 S. Ct. at page 1037, 2 L. Ed. 2d 1124):

" '*It is not believed that taxpayers who are so negligent as to leave out of their returns items of such magnitude should be accorded the privilege of pleading the bar of the statute.*' * * *" (Emphasis supplied.)

The opinion next considered that the House then passed the section as it had been recommended and that the Senate Committee accepted the House action of fixing a five year statute of limitations in such situations. The section eventually became law.

The Supreme Court of the United States observed of the Commissioner's argument (357 U. S. 35, 78 S. Ct. 1037, 2 L. Ed. 2d 1119) that:

"* * *, the Commissioner stresses the occasional use of the phrase 'understates gross income' in the legislative materials. The force of this contention is much diluted, however, when it is observed that *wherever this general language is found its intended meaning is immediately illuminated by the use of such phrases as 'failed to disclose' or 'to leave out' items of income. * * *"* (Emphasis supplied.)

The Court then pointed (357 U. S. 36, 78 S. Ct. 1037, 2 L. Ed. 2d 1124) out:

"The Commissioner also suggests that in enacting § 275 (c) Congress was primarily concerned with providing for a longer period of limitations where returns contained relatively large errors adversely affecting the Treasury, and that effect can be given this purpose only by adopting the Government's broad construction of the statute. * * *"

In concluding its consideration of these arguments, the Court finally stated (357 U. S. 36, 78 S. Ct. 1037, 2 L. Ed. 2d 1124):

"* * * But this theory does not persuade us. For if the mere size of the error had been the principal concern of Congress, one might have expected to find the statute cast in terms of errors in the total tax due or in total taxable net income. We have been unable to find any solid support for the Government's theory in the legislative history. Instead, as *the excerpts set out above illustrate, this history shows to our satisfaction that the Congress intended an exception to the usual three-year statute of limitations only in the restricted type of situation already described.* (Emphasis supplied.)

"*We think that in enacting § 275(c) Congress manifested no broader purpose than to give the Commissioner an addi-*

*tional two years to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors.* In such instances the return on its face provides no clue to the existence of the omitted item. On the other hand, when, as here, the understatement of a tax arises from an error in reporting an item disclosed on the face of the return the Commissioner is at no such disadvantage * * *." (Emphasis supplied.)

Analysis of the entire opinion shows clearly that the United States Supreme Court rejected the concept of "understatement of income", as a matter of statutory interpretation; that Court premised its conclusion on "omission to report". An examination of our statute law, however, reveals clearly that it is expressly dependent upon this concept of "understatements of income" rather than "omissions from the tax return". It may very well be that the difference in meaning is not too great—sufficient only to affect the result here.

The Delaware statute is not concerned with the Tax Department being at a "special disadvantage in detecting" a taxpayer's income, as was argued by Petitioners, but rather upon whether the return in and of itself discloses the amount of the taxpayer's income. Nor are "clues" to possible income tax liability, as contended by Petitioners, of relevancy here; the taxpayers are not supposed to show "clues" in their returns so as to have the benefit of the statute of limitations; the taxpayer must report his gross income on his return without grossly understating it, otherwise he will not have the benefit of the statute of limitations, as it will not apply. See 30 *Del. C.* § 1161, which requires "every taxable" to "make a return * * * stating specifically the items of gross income * * *". The fact here is that Petitioners reported a gross income of $53,129.02—only about one-third of their total gross income which exceeded $156,000.00.

■ The Commissioner's final argument is that—

"* * *. The statute is clear; there is no reason for construction. 2 *Sutherland, Statutory Construction* § 4702 (3rd Ed. 1943)."

The Court assumes that the Commissioner means thereby that the statute is to be applied as read. This citation to *Sutherland* is to the "Clear and Unambiguous Statute" Doctrine; the rule that where "the intention of the legislature is so apparent from the face of the statute that there can be no question as to its meaning, * * *".

I agree and hold that the statute as written controls, and that "there is no room for construction"; inasmuch as the Petitioners nowhere set forth in their return the amount of their gross income from capital gains, the statute of limitations cannot be applied.

It is quite clear that the cited rule is wholly applicable; such rule has long been in effect in this State, and the Delaware Courts have never been loath to apply it as determinative in a case where, as here, the language of the legislation justifies it. *Hartford Accident & Indemnity Co. v. W. S. Dickey Clay Mfg. Co.*, 26 Del. Ch. 411, 422, 24 A. 2d 315, 320 (Sup. Ct. 1942), affirming 26 Del. Ch. 16, 21 A. 2d 178 (Ct. Ch. 1941); *Delaware Steeplechase & Race Ass'n v. Wise*, 2 Terry 587, 598, 27 A. 2d 357, 361 (Sup. Ct. 1942); *Brown Bros. & Co. v. Wilmington & Brandywine Leather Co.*, 9 Del. Ch. 39, 60, 74 A. 1105, 1111 (Ct. Ch. 1910); and *State v. Ross*, 4 Terry 490, 493, 50 A. 2d 410, 411 ( Del. Gen. Sess. 1946).

The decision of the Tax Board is affirmed, the appeal is dismissed and the deficiency assessment sustained. An order giving effect to this conclusion may be submitted.