John S. and Mary C. BURPULIS, Appellees Below, Appellants,

v.

DIRECTOR OF REVENUE, Appellant Below, Appellee.

Supreme Court of Delaware.
Submitted: Sept. 13, 1984.
Order: Dec. 4, 1984.
Opinion: June 26, 1985.

Robert E. Schlusser, Schlusser & Reiver, Wilmington, for appellants.

John P. Fedele, and Joseph P. Hurley, Jr. (argued), Deputy Attys. Gen., Dept. of Justice, Wilmington, for appellee.

Before HERRMANN, C.J., McNEILLY and HORSEY, J.

HERRMANN, Chief Justice:

The sole issue before this Court involves the relationship between the Delaware personal income tax law and the federal tax provision, I.R.C. § 221,[1] which allows a special deduction for a two-earner married couple filing a joint federal income tax return. We find that, under Delaware law, for state income tax purposes such deduction is not available to two-earner married couples who claim the deduction on their joint federal returns, but who elect to file separate state returns. Accordingly, we affirm the decision of the Superior Court.

I.

The appellants, John S. and Mary C. Burpulis, are husband and wife, both of whom

---

1. I.R.C. § 221, enacted in 1981, provides in pertinent part:
  (a) DEDUCTION ALLOWED
  (1) IN GENERAL—in the case of a joint return under § 6013 for the taxable year, there shall be allowed as a deduction an amount equal to 10% [5% for 1982] or the lessor of—

  (A) $30,000 or
  (B) The qualified earned income of the spouse with the lower qualified earned income for such taxable year.

were employed during 1982. They filed a joint federal income tax return for 1982, taking advantage of the two-earner married couple deduction. For 1982, I.R.C. § 221 allowed two-earner married couples to reduce adjusted gross income on their joint return by 5% of the lower earning spouse's wages. Hence, the appellants reduced their aggregate adjusted gross income by $913.

The appellants chose to file separate Delaware personal income tax returns as permitted by 30 *Del.C.* § 1162(2).[2] They allocated their joint federal adjusted gross income between their separate Delaware returns, with the wife receiving the $913 two-earner married couple deduction. As a result, the wife's state tax liability was reduced by $77.

In June 1982, the Division of Revenue of the State of Delaware (hereinafter, "the Division") had issued *Tax Ruling* 82-1,[3] stating that the two-earner married couple deduction would not be available for Delaware income tax purposes where a married couple filed a joint federal income tax return, but elected to file separate state returns. Therefore, the Division issued to the appellants a Notice of Assessment for the amount of tax deficiency which resulted from claiming the two-earner married couple deduction on their separate state returns.

The appellants filed a petition with the Tax Appeal Board (hereinafter, "the Board"). The Board held that, when the General Assembly chose "Federal adjusted gross income" as the basis upon which to compute state tax liability, it meant to incorporate all the adjustments to adjusted gross income permitted under federal law, including the two-earner married couple deduction. Accordingly, the Board allowed the deduction.

The Division appealed the Board's decision to the Superior Court. The Superior Court reversed the Board, holding that, where a married couple claims the two-earner married couple deduction on a joint federal return and then elects to file separate state returns, for state income tax purposes, the couple must recompute federal adjusted gross income as if each spouse had filed separate federal returns.

The husband and wife appeal.

## II.

The outcome of the instant case turns on the validity of *Tax Ruling* 82-1. On this

---

**2.** 30 *Del.C.* § 1162(2) provides:

**§ 1162. Joint or separate returns of husband and wife.**
If for any taxable year:

     *     *      *     *      *     *      *     *      *     *      *

(2) The federal income tax liability of husband and wife, either both residents of this State or both nonresidents of this State, is determined on a joint federal income tax return; then they may file either a joint return or separate returns under this chapter, whichever they elect;

**3.** *Tax Ruling* 82-1 provides in pertinent part:

  3. *Deduction for Two-Earner Married Couples*
     *     *      *     *      *     *      *     *      *     *      *

Under Delaware law there is only one tax rate schedule applicable to all taxpayers, whether married or single. Hence, the "marriage tax penalty" that frequently results under Federal law in the case of two-earner married couples filing joint returns does not occur under Delaware law. Since Federal adjusted gross income is the starting point for computing Delaware adjusted gross income, in the case of married taxpayers who file a *joint* Federal return and also file a *joint* Delaware return, the new deduction for two-earner married couples will automatically carry over and be recognized for Delaware purposes. However, if a two-earner married couple files a joint Federal return claiming the new deduction, and then elects to file separate Delaware returns, the deduction claimed on the Federal return will not carry over to the Delaware return. The reason for this is that under long-standing administrative policy and practice, where taxpayers elect to file separate Delaware returns, the Federal adjusted gross income of each spouse, and the deductions attributable to each, must be determined as if they had filed separate Federal returns in arriving at Federal adjusted gross income. Accordingly, since the new deduction for two-earner married couples could not be claimed by the lower earning spouse under Federal law if a separate return was filed, such deduction will not carry over to the separate return of the taxpayer for Delaware purposes.

appeal, the taxpayers challenge both the validity of the regulation and the Division's power to issue it. We conclude that there is no merit in either ground of appeal.

■ *Tax Ruling* 82–1, an administrative regulation, will carry the force and effect of law so long as it "does not exceed the scope of the statute and is within the rulemaking authority of [the Secretary of Finance]." *Porter Brown Limestone, Co. v. Olson,* Tenn.Supr., 648 S.W.2d 242, 243 (1982). *See Public Utilities Commission v. United States,* 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); *Fusco-Amatruda Co. v. Tax Commissioner,* Conn.Supr., 168 Conn. 597, 362 A.2d 847 (1975). *Accord Swift v. Taxation Division Director,* N.J.Tx., 183 N.J.Super. 378, 4 N.J.Tax 115, 443 A.2d 1132 (1982).

Therefore, *Tax Ruling* 82–1 can withstand attack only if it was issued with the requisite authority and is not inconsistent with Delaware tax laws. We find that *Tax Ruling* 82–1 satisfies both of these requirements.

### A

The taxpayers argue that, because key provisions of the federal Internal Revenue Code have been incorporated by reference in the Delaware tax code, under 30 *Del.C.* § 1105 "Federal adjusted gross income as defined in the laws of the United States" necessarily means the adjusted gross income figure exactly as it appeared on their joint federal income tax return. Based on that premise, the taxpayers argue that any "modification" in the statutory definition of "Federal adjusted gross income" may issue only from the General Assembly, as the taxing authority, and not from the Division. Thus, the taxpayers contend that *Tax Ruling* 82–1 is invalid because the Division had no authority to issue a regulation altering the meaning of "Federal adjusted gross income." We disagree.

■ We find that *Tax Ruling* 82–1 falls squarely within the Secretary of Finance's rulemaking authority to promulgate the rules and regulations necessary to enforce the tax laws of our State. 30 *Del.C.* § 354.[4] In enacting 30 *Del.C.* § 354, the General Assembly delegated to the Secretary of Finance the authority to make any necessary adjustments in the tax laws so long as they "are not inconsistent with [Title 30]." 30 *Del.C.* § 354. Therefore, we disagree with the appellants' assertion that the General Assembly alone has the power to modify the tax code. *But see Estate of Richard P. Fox and Jacqueline D. Fox v. Director of Revenue,* T.A.B., 1 Del. Cases ¶ 200–279 (CCH) (1975).

### B

Given then that the Division had the authority to issue the regulation, we must next inquire as to whether *Tax Ruling* 82–1 exceeds the scope of 30 *Del.C.* § 1105 as a regulation inconsistent with Title 30. 30 *Del.C.* § 354. We find that such regulation is not inconsistent with Title 30.

The taxpayers look to the intent of the General Assembly to support their argument that *Tax Ruling* 82–1 runs afoul of Title 30. Because the Delaware tax laws incorporate key federal tax provisions, the taxpayers argue that the General Assembly meant to wed Delaware tax law to its federal counterpart. Therefore, they argue that "Federal adjusted gross income" under 30 *Del.C.* § 1105 equals that precise figure as reported on their joint federal return. Because the two-earner married couple deduction comprised part of aggregate adjusted gross income on their federal return, the taxpayers argue that such deduction must also appear as a component of separate adjusted gross income on their separate state returns—to be accomplished by apportioning the aggregated adjusted

---

4. 30 *Del.C.* § 354 provides:
   **§ 354. Rules, regulations and enforcement.**
   The Secretary of Finance shall make rules, regulations and decisions not inconsistent with this title and require such facts and information to be reported as he deems necessary to enforce any state tax.

gross income from their joint federal returns between their separate state returns.

■ Because *Tax Ruling* 82–1 eliminates the carry-over from federal to state tax returns where a couple files a joint federal return but separate state returns, the taxpayers argue that the regulation contravenes the legislative intent to inextricably link the Delaware tax law to the federal tax law. We disagree. Indeed, in our view, *Tax Ruling* 82–1 reinforces the functional relationship between the tax laws of our State and those of the federal government, because the regulation rests firmly on a tax principle well-recognized under federal law—that is, the "taxable unit" of husband and wife.

The United States Supreme Court has recognized that, in the case of a married couple, there are three potential taxpayers: the husband, the wife, and the "taxable unit" of husband and wife. *Taft v. Helvering*, 311 U.S. 195, 61 S.Ct. 244, 85 L.Ed. 122 (1940); *Helvering v. Janney*, 311 U.S. 189, 61 S.Ct. 241, 85 L.Ed. 118 (1940). Where the husband and wife elect to file a joint return, they opt to be treated as a "taxable unit," which is, in effect, a separate individual taxpayer. *Taft v. Helvering, supra* 311 U.S. at 198, 61 S.Ct. at 245. A marital unit filing a joint return pays taxes calculated on the basis of "aggregate adjusted gross income," whereas, taxpayers who file separate returns incur tax liability on the basis of "separate adjusted gross income." "Separate adjusted gross income" and "aggregate adjusted gross income" are distinct concepts such that it would be wholly inaccurate to add each spouse's "separate adjusted gross income" in hopes of arriving at what would be the "aggregate adjusted gross income" of the marital unit if it filed a joint return. In the context of charitable contributions, the United States Supreme Court noted that, for the purposes of tax law, the sum of the parts does not equal the whole:

> The principle that the joint return is to be treated as a return of a "taxable unit" and as though it were made by a "single individual" would be violated if in making a joint return each spouse were compelled to calculate his or her charitable contributions as if he or she were making a separate return.

*Taft v. Helvering, supra* at 198, 61 S.Ct. at 245.

Hence, only a marital unit filing a joint return is eligible to use "aggregate adjusted gross income" to calculate state taxes owed; once that "taxable unit" is dissolved for tax purposes, and husband and wife become separate taxpayers, each must recompute his "separate adjusted gross income" for a separate tax return. Allocating aggregate adjusted gross income between separate taxpayers represents a concept foreign to tax law because aggregate adjusted gross income applies only to joint returns.

In the instant case, allocating aggregate adjusted gross income between separate husband and wife taxpayers is clearly unjustified because some deductions, including the two-earner married couple deduction, are components only of aggregate adjusted gross income, but not of separate adjusted gross income. These deductions are incident only to the filing of a joint return. Once the married couple files separate returns, the taxable unit eligible for the § 221 deduction disintegrates, thereby eliminating the availability of the § 221 deduction for separate husband and wife taxpayers.

*Tax Ruling* 82–1 is consistent with the tax principles of the "taxable unit" and "aggregate adjusted gross income," because it requires married couples, filing joint federal returns and separate state returns, to recompute their aggregate adjusted gross income as separate adjusted gross income for purposes of filing a separate state return. Therefore, *Tax Ruling* 82–1 is completely consistent with the General Assembly's intent to integrate certain federal tax law provisions in the tax laws of our State.

Moreover, *Tax Ruling* 82-1 is consistent with Title 30 because it sets forth a sound construction of the Statute which avoids absurd results. It is axiomatic in our State that:

> The object of statutory construction is to give a sensible and practical meaning to the statute as a whole in order that it may be applied in future cases without difficulty ... and if a literal interpretation leaves a result inconsistent with the general statutory intention, such interpretation must give way to the general intent. This is particularly true where such a literal interpretation would lead to unjust and mischievous consequences.

*Nationwide Mutual Insurance Co. v. Krongold*, Del.Supr., 318 A.2d 606, 609 (1974).

Conversely, the appellants' construction of the Statute (by which they would be permitted to carry over to their separate state tax returns the § 221 deduction from their joint federal return) would, in our view, yield an absurd result.

At the federal level, Congress enacted the § 221 deduction to offset the "marriage tax penalty" precipitated by the use of different tax rate schedules based on the taxpayer's filing status—single, married or head-of-household.[5]

In Delaware, however, there is no marriage tax penalty; the Delaware tax code applies the same tax rate schedule to all individuals, regardless of the status in which they file their returns. 30 *Del.C.* § 1102.[6] As no marriage tax penalty exists in Delaware, no need arises for a counter- vailing § 221 deduction. Therefore, a construction of 30 *Del.C.* § 1105 which introduces such deduction into the Delaware tax structure would be illogical.

Indeed, to permit the two-earner married couple deduction in Delaware would be to introduce inequities in the tax system where none existed before. Were married taxpayers allowed to claim the § 221 deduction on separate state returns, they would benefit by virtue of their married status while single taxpayers would suffer. Such result contravenes the tax laws of our State, because, at any given level of income, Delaware taxpayers pay taxes at the same rate regardless of their marital status. 30 *Del.C.* § 1102.

Any construction of 30 *Del.C.* § 1105 which sanctions a § 221 deduction stands at odds with the mandated tax principles of horizontal equity and uniformity embodied in Title 30. Del. Const. art. VIII, § 1;[7] *Conard v. State*, Del.Super., 16 A.2d 121, 125 (1940). Because *Tax Ruling* 82-1 disallows carrying over the § 221 deduction for purposes of separate state tax returns, it preserves uniformity in our tax system, as required by our Constitution and Title 30.

\* \* \*

Accordingly, we hold that the Division had the authority to issue *Tax Ruling* 82-1; that such regulation is not inconsistent with Title 30; that, therefore, *Tax Ruling* 82-1 carries the force and effect of law.

\* \* \*

---

**5.** At the time I.R.C. § 221 was enacted, Congress believed that imposing a proportionately greater tax burden on married individuals tended to "undermine respect for the family, by affected individuals and for the tax system itself." S.Rep. No. 144, 97th Congr., 1st Sess. 29 *reprinted in* 1981 U.S. Code Cong. & Ad.News 105, 136. Congress remedied this inequity by allowing "a percentage of the earned income of the spouse with the lower earnings to be, in effect, free from tax." *Id.*

**6.** 30 *Del.C.* § 1102 provides in pertinent part:
  (a) A tax is hereby imposed for each taxable year on the entire taxable income of every resi- dent of this State and on the taxable income of every nonresident which is derived from sources within this State. [Rates listed vary according to income level and taxable year, but not with respect to separate or joint filing status.]

**7.** Del. Const. art VIII, § 1 provides in pertinent part:
  All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws passed by the General Assembly.

It follows, in our opinion, that the tax-payers have not sustained their burden of proving that they were entitled to the § 221 deduction. *See Brown Group, Inc. v. Administrative Hearing Commission,* Mo.Supr., 649 S.W.2d 874 (1983).

AFFIRMED.