**Nancy WITKOWSKI, individually and as guardian for Andrew Witkowski, Plaintiff,**

v.

**Melvin Allen BROWN, United Way of Delaware, Inc., Goodwill Industries, and Aetna Life and Casualty Company, Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted: May 1, 1989.
Decided: June 23, 1989.

Wayne A. Marvel, Biggs and Battaglia, Wilmington, for plaintiff.

Roderick R. McKelvie, Ashby, McKelvie & Geddes, Wilmington, for defendants.

## OPINION

BARRON, Judge.

This matter concerns a personal injury case filed in September, 1986, by Mrs. Witkowski (Plaintiff) on her own behalf and on behalf of her son, Andrew, for injuries in a September 26, 1984 automobile accident in Wilmington, Delaware. Melvin Allen Brown, his employer, Goodwill Industries, and United Way of Delaware (Defendants) were named as defendant tortfeasors in that suit.

Defendants were insured for any alleged liability by Transit Casualty Company (Transit), which is, and has been, insolvent and in liquidation since prior to filing of

this action. Pursuant to 18 *Del.C.*, Ch. 42, the Delaware Insurance Guaranty Association Act (Act), the Delaware Insurance Guaranty Association (Association) assumed the position of the insolvent Transit.

The Association, on behalf of the defendants, asserted as an affirmative defense the provisions at Section 4212(a) of the Act, requiring exhaustion of other available insurance as a prerequisite to claiming against the Association.

As a result, plaintiff amended her complaint to join her insurer, Aetna Life and Casualty (Aetna), as a defendant. At the time of the incident, Aetna provided plaintiff with uninsured motorist coverage with a single limit coverage of $50,000. Following arbitration, Aetna and the plaintiff settled for $10,000 and court costs. Pursuant to 18 *Del.C.*, § 3902(a)(4), plaintiff's claim against the defendants was assigned to Aetna. Aetna's counsel was substituted for the plaintiff's in this action on February 8, 1988.

After a year of inaction, on January 4, 1989, defendants filed a motion to dismiss for failure to prosecute. Aetna replied it had filed a claim against Transit's receiver and that claim might be cut off by dismissing this action.

Following a conference on the motion with Judge Del Pesco of this Court on March 7, 1989, it was agreed that a motion for summary judgment would be filed. This motion has been filed, briefed, and now stands before this Court for consideration.

## I.

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super.Ct.Civ.R. 56(c). The purpose of the Rule is to provide a method by which issues of law involved in proceedings may be speedily brought before the Court and disposed of without unnecessary delay. *State ex rel. Mitchell v. Wolcott*, Del.Supr., 83 A.2d 759 (1951). Summary judgment will be rendered in any cause if the evidence shows there is no genuine issue as to any material fact. *Matas v. Green*, Del.Super., 171 A.2d 916 (1961).

Uncontroverted evidence offered in support of a motion for summary judgment must be accepted as true. *Battista v. Chrysler Corp.*, Del.Super., 454 A.2d 286 (1982). If the non-moving party does not controvert the movant's affidavits or other record evidence with an affidavit of his own, the motion for summary judgment should be granted. *Nix v. Sawyer*, Del.Super., 466 A.2d 407 (1983).

For the purposes of this motion, the parties to this action have adopted the defendant's statement of facts regarding the claim and the assignment thereof. There is, therefore, no material fact in dispute and the situation is a proper one for summary judgment.

The issues to be decided are questions of first impression in this jurisdiction and are as follows:

1. Does Plaintiff Witkowski, after settling for less than the full limits of her uninsured motorist coverage and subrogating her claim to Aetna, have a surviving claim against the defendants or the Association?

2. Does Aetna, as subrogee of Plaintiff Witkowski, have a claim against the defendants, as alleged tortfeasors insured by an insolvent insurance carrier, as individuals or through the defendants against the Association?

3. Whether granting summary judgment in favor of the defendants could prejudice or serve as a bar to Aetna's suit for recovery from the receiver of the insured defendants' insolvent insurance carrier?

## II. *The Delaware Insurance Guaranty Association Act*

As a result of national concern over the harms to the public resulting from insurance companies becoming insolvent, *See, e.g.*, 1 Proceedings of the National Assoc. of Insurance Commissioners 52 (1963), the National Association of Insurance Commis-

sioners Insurance Guaranty Association Model Bill was drafted. It was intended to protect the public from nonpayment of claims due to the insolvency of the insurer and has been adopted throughout the country. The Delaware Insurance Guaranty Association Act, 18 *Del.C.*, Ch. 42, is Delaware's version of this Model Bill.

Under this Act, the Association stands in place of the insolvent insurer, 18 *Del.C.*, § 4208(a)(2), in order to prevent loss and delay to the claimants and policyholders of an insolvent insurer. 18 *Del.C.*, § 4202. The Association is authorized to pay covered claims, as defined by the Act, § 4205(3), up to the limit provided. 18 *Del.C.*, § 4208(a)(1). It provides a limited form of protection for the public whereby the Association assumes all of the rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent. *See* 18 *Del.C.*, § 4208(a)(2).

### III.

#### A.

The first issue before this Court is whether the plaintiff, after settling with Aetna for less than the limit of her uninsured motorists' coverage, has a surviving claim against the defendants or the Association. This question is controlled by 18 *Del.C.* § 4212(a), which reads:

> Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim *shall be required to exhaust first his right under such policy.* Any amount payable on a covered claim under this chapter shall be reduced by the amount of any recovery under such insurance policy. (Emphasis added.)

The defendants had been insured by an insolvent insurance carrier and are therefore entitled to coverage from the Association as provided for by the Delaware Insurance Guaranty Act, 18 *Del.C.*, § 4208(a)(2). Therefore the plaintiff has a "covered claim", § 4205(3), *infra*, within the coverage of the Act. However, by 18 *Del.C.*, § 4212(a), the plaintiff is required to exhaust her own uninsured motorist coverage with Aetna before she may bring any claim against the Association, or, if her claim exceeded this obligation, 18 *Del.C.*, § 4208(a)(1), against the defendants individually. *See, Henninger v. Riley*, 317 Pa.Super. 570, 464 A.2d 469 (1983). *See also, Sands v. Pennsylvania Insurance Guaranty Association*, 283 Pa.Super. 217, 423 A.2d 1224 (1980); *Vokey v. Mass. Insurers Insolvency Fund*, Supr.Jud.Bd., 381 Mass. 386, 409 N.E.2d 783 (1980); *Accord, State Farm Mut. Auto Liab. Ins. Co. v. Kiser*, 168 N.J.Super. 230, 402 A.2d 952 (1979). *But see, Hickerson v. Protective Nat. Ins. Co.*, La.Supr., 383 So.2d 377 (1980) (claimant allowed to recover claim against Insurance Guaranty Association without first being required to proceed against his uninsured motorist carrier.). *See generally*, Annot., 30 A.L.R. 4th 1110, 1139.

■ It is well settled in Delaware that words shall be construed according to the common and approved usage of the English language. 1 *Del.C.*, § 303. The word "exhaust" is defined as: "To use up the whole supply or store of: expend or consume entirely." Webster's Third New International Dictionary, pg. 796 (1971). The plaintiff had $50,000 available under her uninsured motorist coverage. She settled with Aetna for $10,000—⅕ of the amount available to her. This plainly is not using up the whole supply. This failure to exhaust the coverage available to her is therefore a bar to any claims against the Association under 18 *Del.C.*, § 4212(a).

■ Furthermore, the plaintiff's continuing attempt to lay claim against the defendants as individuals is also barred. The opposite conclusion would obviate the general intent of the Act.

The Court should attempt to construe the statute in a manner which avoids an absurd or mischievous result. *Burpulis v. Director of Revenue*, Del.Supr., 498 A.2d 1082, 1087 (1985). In *Richardson v. Wile*, Del.Supr., 535 A.2d 1346, 1348 (1988), Justice Walsh cited with approval the *Burpulis* rule of statutory construction:

> In Delaware, it is a settled rule of construction to read a statute as a whole

in an effort to effectuate its general legislative intent. Specifically, this Court has held:

> The object of statutory construction is to give a sensible and practical meaning to a statute as a whole in order that it may be applied to future cases without difficulty ... and if a literal interpretation leaves a result inconsistent with the general statutory intention, such [interpretation] must give way to the general intent. This is particularly true where such a literal interpretation would lead to unjust and mischievous consequences.

*Burpulis v. Director of Revenue*, Del. Supr., 498 A.2d 1082, 1087 (1985) (citing *Nationwide Mutual Insurance Co. v. Krongold*, Del.Supr., 318 A.2d 606, 609 (1974).

One of the stated purposes of the Act is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer. 18 *Del.C.*, § 4202. Chapter 42 should be liberally construed to effect the purpose specified in § 4202. 18 *Del.C.*, § 4204.

The plaintiff appears to argue that because there is no plain language in Subsection 4212(a) specifically cutting off her claim against the defendants as individuals, she has the right to maintain this claim. In other words, even if barred by § 4212(a) from any further claim against the Association, she may still claim individually against the defendants. This view creates a mischievous result: the plaintiff, though barred by § 4212(a) from claiming directly against the Association could indirectly recover against it. Any judgment against the defendants would be a covered claim under the Act as soon as it was paid. 18 *Del.C.*, § 4205(3). The defendants could then recover the cost of the judgment from the Association. The plaintiff could thereby circumvent the bar provided in § 4212(a). Such a result goes against the

statute's intent, in my view.[1] Non-exhaustion under 18 *Del.C.*, § 4212(a) is therefore held to be a bar to further legal action against the Association and/or the defendants as individuals.

**B.**

The second issue is whether Aetna, as the plaintiff's subrogee, has a claim against the Association and/or against the defendants as individuals, as alleged tortfeasors insured by an insolvent insurance company. As to any claim against the Association, the issue is controlled by § 4205(3) of the Act, which reads in pertinent part:

> "Covered claim" means an unpaid claim, including unpaid premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy, to which this chapter applies.... *"Covered claim" shall not include any amount due any reinsurer, insurer, insurance pool or underwriting association as subrogation recoveries or otherwise....* (Emphasis added.)

As Justice Day stated:

> The meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, ... the sole function of the court is to enforce it according to its terms.

*Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).

■ The Association is deemed the insurer to the extent of its obligation *on the "covered claims"* ... 18 *Del.C.*, § 4208. (Emphasis added.). But the statute specifically and explicitly excludes from its definition of "covered claim" "any amount due any insurer ... as subrogation recoveries or otherwise ..." 18 *Del.C.*, § 4205(3). Absent ambiguity or doubtful meaning, there is no occasion for resort to constructional aids. *Brown v. Robyn Realty Co.*, Del.Super., 367 A.2d 183, 189 (1976). *Accord, Caminetti, supra*. Where the intention of

---

1. This same reasoning was applied in *Hickerson, supra*, to obtain the opposite result. That result, however, is distinctly a minority view in this country today.

the legislature is so apparent from the face of the statute that there can be no question as to its meaning, there is no room for construction. *Logan v. Davis*, Del.Super., 183 A.2d 596, 602 (1962); 2A Sutherland, Stat. Const. § 46.01 (4th Ed.1984).

Judge Lynch also stated in *Logan:*

[S]uch rule has long been in effect in this State, and the Delaware Courts have never been loath to apply it as determinative in a case where, as here, the language of the legislation justifies it.

*Id.* at 602.

■ This Court agrees and holds that by its plain, unambiguous language, § 4205(3) bars Aetna from any claim against the Association, by means of subrogation recoveries or otherwise.

As to Aetna's claim against the defendants as individuals, it is only logical that if Aetna is not allowed any claim against the Association, it cannot be allowed any claim against those the Association was created to protect. This is the view adopted in the majority of jurisdictions today by judicial construction or statutory inclusion. *See, Fireman's Fund Ins. v. Pitco Frialator*, Ct.App., 145 Wis.2d 526, 427 N.W.2d 417 (1988); *Accord, Sandson's Bakery v. Glover*, 162 N.J.Super. 225, 392 A.2d 640 (1978). *But see, Ursin v. Insurance Guaranty Association*, La.Supr., 412 So.2d 1285 (1981), *rev'd on rehearing* (4–5–1982), *reh'g denied* (5–14–1982). (*rehearing dicta:* subrogated insurance carrier under uninsured motorist coverage may recover from insured of insolvent insurance carrier even when unable to recover from Insurance Guaranty Association, because not expressly prohibited by statute.) (minority view.). The Guaranty Association was established to protect the individual insured against insolvent insurers, not to protect insurance companies from the insolvencies of other insurers. *E.L. White, Inc. v. City of Huntington Beach*, 138 Cal.App.3d 366, 371, 187 Cal.Rptr. 879, 882 (1982). *Accord, Sands, supra.*

The minority view taken by *Ursin, supra,* allowing a subrogated insurance carrier to recover directly against the insured of an insolvent insurance carrier, appears to support Aetna's position. However, the Louisiana Supreme Court also stated in *Ursin:*

Unlike some other states our legislature has not seen fit to amend the act and include a provision that prohibits suits against the insured of an insolvent insurer by such a subrogated insurer.

*Ursin, supra,* at 1290.

Delaware is one of those "other states" referred to in *Ursin.* The General Assembly saw fit to amend the Guaranty Act in 1975. The amendment to 18 *Del.C.*, § 4205(3), regarding claims for subrogation recoveries against the insured of an insolvent insurer by another insurance company, provided in pertinent part: "[I]n no event may any such claim be asserted in any legal action against the insured of such insolvent insurer." In short, even though barring subrogation recoveries against the insured of an insolvent insurer was already a reasonable, logical implication of the Act, the General Assembly chose to explicitly codify this implication.

The language of this codification is explicit, clear, and unambiguous, and speaks plainly of the legislative intent behind the Guaranty Act. I hold, therefore, that Aetna is barred by 18 *Del.C.*, § 4205(3) from maintaining any claim or suit against the defendants.

### C.

■ The final issue is whether granting summary judgment in favor of the defendants could prejudice or serve as a bar to Aetna's suit for recovery from the receiver of the insured defendants' insolvent insurer.

Aetna seems to be arguing that removal of the plaintiff's claim which underlies its subrogation claim could cut off or prejudice its claim against the receivership provided in 18 *Del.C.*, § 3902(a)(4) and 18 *Del.C.*, § 4205(3).

18 *Del.C.*, §˙3902(a)(4) reads:

In the event of payment to any person under uninsured vehicle coverage and, subject to the terms of such coverage, to the extent of such payment, the insurer

shall be entitled to the proceeds of any settlement recovery from any person legally responsible for the bodily injury or property damage as to which such payment was made and to amount recoverable from the assets of the insolvent insurer of the other vehicle; provided, that this right of subrogation is limited to the amount of coverage required by the financial responsibility law.

18 *Del.C.*, § 4205(3) reads, in pertinent part:

> ... provided, that a claim for any such amount, asserted against a person [insured][2] under a policy issued by an insurer which has become an insolvent insurer, which, if it were not a claim by or for the benefit of a reinsurer, insurer, insurance pool or underwriting association, would be a "covered claim" may be filed directly with the receiver of the insolvent insurer, but in no event may any such claim be asserted in any legal action against the insured of such insolvent insurer.

Both provide expressly for a subrogation recovery against the receiver of an insolvent insurer; § 4205(3) provides that this is the exclusive remedy available to the subrogee insurance company. Furthermore, these provisions in effect place the subrogee insurance company in the same position the Association would hold if it had paid the claim. *See,* 18 *Del.C.*, § 4221.

Aetna has provided no sufficient justification for its concerns in this area, and even if it had provided such, this Court would be loathe to rule against such clear and explicit language and intention. It would be an inefficient use of judicial resources to allow statutorily barred suits to continue merely to alleviate unjustified concerns of the subrogee.

## IV. CONCLUSION

This Court finds, therefore, that the plaintiff, having failed to exhaust her uninsured motorist coverage as required by 18 *Del.C.*, § 4212(a), has no claim against the individual defendants or the Association. The Court further finds that Aetna is barred by 18 *Del.C.*, § 4205(3) from any recovery from the individual defendants or the Association.

Having stated the above, the defendants' Motion For Summary Judgment is hereby GRANTED.

An Order consistent with this Opinion has been entered and a copy thereof is attached hereto.

## ORDER

AND NOW, to wit, this 23rd day of June, 1989, the defendants having moved for a summary judgment, and the Court having found that there is no genuine issue of material fact and that the defendants' insurer Transit Casualty Company is insolvent and having further found that the plaintiffs have settled their claims with regard to the injuries they suffered as a result of the automobile accident that is the subject of this action by agreeing to a settlement of $10,000.00 with their insurer, Aetna Life and Casualty Company under their uninsured motorist coverage, it is:

ORDERED that a summary judgment is and shall be entered in favor of the defendants and against the plaintiff on the ground that the plaintiffs' claims are, therefore, barred by 18 *Del.C.*, § 4212 and any subrogation claim Aetna Life and Casualty may have against the individual defendants based on its payment to the plaintiffs, is barred by 18 *Del.C.*, § 4205(3).

---

**2.** There is a typographical error in the Annotated Code. The Act at 60 *Del.Laws,* Chapter 189 *shows that* the 1975 amendment to § 4205(3) related to persons "insured" by an insolvent insurer. However, the Annotated Code incorporated this amendment to read person "issued" by an insolvent insurer. "[I]nsured" is correct.