**UNIQUE SYSTEMS DEVELOPMENT, INC., d/b/a At the Video I & II, Respondent,**

v.

**STAR AGENCY, Respondent,**

**American Executive Agency, Inc., et al., Appellants.**

**No. C8–92–1810.**

Court of Appeals of Minnesota.

May 18, 1993.

Review Denied July 15, 1993.

Jerome R. Klukas, Richard J. Shroeder, Castor, Klukas, Scherer & Logren, Chartered, Minneapolis, for Unique Systems Development, Inc., d/b/a At the Video I & II.

Rolf E. Sonnesyn, Foster, Waldeck & Lind, Ltd., Minneapolis, for Star Agency.

David F. Herr, Mary R. Vasaly, James F. Hanneman, Maslon Edelman Borman & Brand, Minneapolis, for American Executive Agency, Inc., et al.

Considered and decided by FORSBERG, P.J., and PARKER and KALITOWSKI, JJ.

## OPINION

KALITOWSKI, Judge.

Respondent Unique Systems Development, Inc. (Unique) obtained a directed verdict and a judgment for damages against respondent Star Agency (Star) and appellants American Executive Agency, Inc. and Peter Bergerson (American). Star paid the judgment amount and, along with Unique, then sought to enforce the judgment against American. Because their insurer had become insolvent, American sought a permanent injunction prohibiting Unique and Star from enforcing the judgment against them directly. The trial court de-

nied American's request and this appeal followed.

## FACTS

In February 1986, a video store owned by Unique was vandalized. After submitting an insurance claim for the damage, Unique learned that its insurance agent, Star, had sought coverage from American and had been told by American that insurance for Unique had been obtained. Unique subsequently discovered it was not insured and that American had misrepresented that such insurance coverage was in place.

Unique sued Star and American. Before trial, Star and its errors and omissions insurer, Employers Reinsurance Corporation (Employers), entered into a loan agreement with Unique whereby Unique was loaned $50,000 subject to repayment only if Unique recovered from American.

At trial, the court directed a verdict against Star on a breach of contract claim and against American on breach of contract and negligent misrepresentation claims. Because the jury determined Star's breach was not a direct cause of Unique's damages, judgment for approximately $64,500 was entered against American, but not Star. Shortly after trial, Equity General Insurance (Equity General), American's errors and omissions insurer, became insolvent and the Minnesota Insurance Guaranty Association (MIGA) assumed the obligations of Equity General.

On appeal, Star was found to be jointly and severally liable with American for the judgment and Unique was awarded approximately $11,700 in prejudgment interest. Star then discharged its liability by paying Unique an additional $17,051.65 in an arrangement similar to the prior loan agreement.

On remand to the trial court, Star was granted an order of indemnity against American. Unique and Star then attempted to collect the judgment from American. American sought relief in the form of a permanent injunction barring Unique and Star from enforcing the judgment. American argued that the insolvency of Equity General and the takeover of their claims by MIGA barred Unique and Star from collecting on the judgment from American. The trial court denied American's request for an injunction.

## ISSUES

1. Is this matter properly before this court?

2. Did the trial court err in denying American's request for injunctive relief?

## ANALYSIS

◼ The grant or denial of a permanent injunction lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Bush Terrace Home Owners Ass'n v. Ridgeway*, 437 N.W.2d 765, 768 (Minn. App.1989), *pet. for rev. denied* (Minn. June 9, 1989). However, a reviewing court is not bound by and need not give deference to a trial court's determination of a purely legal question. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). The construction and application of a statute is a legal question and thus fully reviewable by this court. *See Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

### I.

Unique and Star argue this matter is not properly before this court because the trial court's order is not appealable and because American did not raise the MIGA defense in a timely manner. We disagree.

American requested injunctive relief and an order denying an injunction is appealable. Minn.R.Civ.App.P. 103.03(b). Since American met all filing deadlines and requirements for bringing the appeal, this matter is properly before us.

◼ Unique and Star also argue that American's MIGA defense should have been raised before the amended judgment granting Star its right of indemnification against American became final. We disagree. American raised the MIGA act as a bar against enforcement of the judgment

immediately after MIGA denied Unique and Star's claims and Unique and Star attempted to collect the judgment directly from American. Under these facts, we conclude that because the MIGA defense goes to the enforcement rather than the validity of the judgment, the defense was raised in a timely manner.

## II.

In denying the request for an injunction, the trial court rejected American's argument that allowing Unique and Star to enforce the judgment against American violated the MIGA act. The trial court found that the claims of Unique and Star were not based in subrogation and, therefore, were not precluded by the MIGA act. We disagree.

The MIGA act was created by the legislature:

> to provide a mechanism for the payment of covered claims under certain insurance policies and surety bonds, to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the liquidation of an insurer.

Minn.Stat. § 60C.02, subd. 2 (1992). The purpose of an insurance guaranty association is to

> protect policyholders and those with claims against policyholders from the consequences of the insolvency of an insurance company. * * * [T]he sole purpose of [the guaranty association] is to compensate those who have claims against an insurance company which have not been paid because the company is insolvent.

*Reinsurance Ass'n v. Dunbar Kapple, Inc.,* 443 N.W.2d 242, 244 (Minn.App.1989) (quoting Carroll J. Miller, Annotation, *Validity, Construction, and Effect of Statute Establishing Compensation for Claims Not Paid because of Insurer's Insolvency,* 30 A.L.R. 4th 1110, 1113–14 (1984)). Thus, MIGA was created to ensure that third-party claimants, such as Unique and Star, are compensated for covered claims and that policyholders, such as

American, do not suffer financial loss due to the insolvency of their insurer.

MIGA assumed the obligations of Equity General upon its insolvency. Under the MIGA act, any covered claim would be paid with MIGA funds. A covered claim includes any unpaid claim made by

> [a] third party claimant under a liability policy or surety bond, if * * * the claim is for damages to real property situated in this state at the time of damage.

Minn.Stat. § 60C.09, subd. 1(c)(iv)(c) (1992). However, certain types of claims are excluded from coverage by MIGA for policy reasons. These excluded claims include

> *claims due a reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise.* This clause does not prevent a person from presenting the excluded claim to the insolvent insurer or its liquidator, but the claims shall not be asserted against another person, including the person to whom the benefits were paid or the insured of the insolvent insurer, except to the extent that the claim is outside the coverage of the policy issued by the insolvent insurer.

Minn.Stat. § 60C.09, subd. 2(2) (1992) (emphasis added).

American argues that this exclusion in the MIGA act prevents Unique and Star from enforcing the judgment against them because any money collected by Unique and Star ultimately will go to Star's insurer, Employers. We agree.

Under the loan agreement between Unique and Star, Unique is obligated to repay any money collected from American to Star, which is then obligated to make repayment to Employers. The loan agreement states:

> Star and Employers Reinsurance Corporation are entitled to the first Fifty Thousand and no/100 ($50,000.00) Dollars which [Unique] recovers from [American]/Bergerson or their insurers.

Thus, any money collected from American is money due Employers as subrogation or otherwise. *See Anderson Trucking Serv., Inc. v. Minnesota Ins. Guar. Ass'n,* 492 N.W.2d 281, 282 (Minn.App.1992) (claims

for contribution or reimbursement are not covered claims under the MIGA act). Unique and Star argue that Star should at least be allowed to collect its out-of-pocket deductible costs from American. We disagree because under the loan agreement any funds obtained by Unique or Star, up to the full amount of the loan agreement, would be due Employers before Star would be reimbursed for paying the deductible.

We conclude the trial court erred as a matter of law in determining Unique and Star could proceed against American. Allowing Unique and Star to proceed against American would allow Employers to indirectly recover on a claim where the MIGA act would not allow direct recovery. *See Witkowski v. Brown*, 576 A.2d 669, 672 (Del.Super.1989) (a plaintiff, barred from pursuing a claim directly against an insurance guaranty association, cannot indirectly recover from the association by seeking payment of the claim from defendants who would then be entitled to reimbursement from the association).

The fact that Employers would receive the money pursuant to the loan agreement between Unique and Star, and not by directly pursuing a claim against MIGA is immaterial. Minn.Stat. § 60C.09, subd. 2(2) precludes any claims due an insurer, not only as a subrogation claim, but in any manner. *Anderson*, 492 N.W.2d at 282.

Our holding is consistent with the district court's ruling in the declaratory judgment action, brought by Unique and Star against MIGA, issued shortly after trial in this matter. In that action, the district court granted MIGA summary judgment finding that both Unique and Star were obligated to pay Employers any money they would collect from MIGA and, therefore, Unique and Star's claims were excluded from coverage under the MIGA act. Further, this result is consistent with MIGA's stated purpose of protecting policyholders and third-party claimants from financial loss. *See Dunbar Kapple, Inc.*, 443 N.W.2d at 247 ("It would seem illogical to require insurers to contribute to a fund designed to protect policyholders and claimants, then allow various insurers to draw upon the fund or to directly sue the policyholders and claimants whom the fund is designed to benefit.").

We therefore conclude the trial court erred in denying American's request for a permanent injunction prohibiting Unique and Star from enforcing the judgment.

### DECISION

Because American's insurance company is insolvent, the Minnesota Insurance Guaranty Association Act prohibits Unique and Star from enforcing the judgment against American where money collected must be paid to another insurance company.

**Reversed.**