396 So.2d 400 (1981)
Edward T. URSIN, II, et al.,
v.
INSURANCE GUARANTY ASSOCIATION.
No. 13971.
Court of Appeal of Louisiana, First Circuit.
March 2, 1981.
Writ Granted May 1, 1981.
Calvin E. Hardin, Jr., Sera H. Russell, III, Baton Rouge, for plaintiff-appellee, Edward T. Ursin, II et al.
Charles A. Schutte, Jr., Baton Rouge, for defendant-appellant, Ins. Guaranty Assn.
*401 Before ELLIS, COLE and WATKINS, JJ.
WATKINS, Judge.
This appeal is taken by the Louisiana Insurance Guaranty Association (LIGA) from a judgment in favor of National Indemnity Company and against it in the sum of $5,000.00. We reverse in part.
The matter was tried on motions for summary judgment on behalf of plaintiffs (Edward T. Ursin, II, and National Indemnity) and defendant (LIGA) and decided on a stipulation of facts submitted by both plaintiffs and defendant. The facts as stipulated may be briefly summarized as follows:
On June 6, 1975, a 1969 Volkswagen automobile driven by Edward T. Ursin, II was involved in an automobile accident with a vehicle driven by Rosalie Picolo, wife of Arthur Picolo, at the intersection of Veterans Memorial Boulevard and Edenborne Avenue in Jefferson Parish. Mrs. Picolo required medical treatment for injuries sustained therefrom. On March 24, 1976, Arthur Picolo and Rosalie Picolo filed suit against Edward T. Ursin and Manchester Insurance and Indemnity Company in the 24th Judicial District Court for Jefferson Parish. Edward T. Ursin, II was given as the correct name of defendant Ursin by amended petition.
The Volkswagen was insured by Manchester up to $5,000 per person and by National Indemnity Company in excess of $5,000 up to $95,000 per person. After suit was filed, Manchester's financial position became such that it was unable to provide a defense for Mr. Ursin. Mr. Ursin was compelled to hire a lawyer, for whose expenses LIGA admits it was obligated to pay, less a $100.00 statutory deductible. The amount thus due Ursin was included in the judgment from which this appeal is taken, but is not a subject of the appeal.
On March 23, 1977, Mr. and Mrs. Picolo compromised their claim for $75,000, and their suit was dismissed with prejudice. The National Indemnity Company paid $75,000 to effect the settlement. Five thousand dollars ($5,000) of this amount was paid by National Indemnity on behalf of Mr. Ursin pursuant to an agreement executed by Mr. Ursin and National Indemnity Company (which was attached as an exhibit to the joint stipulation) whereby Ursin assigned his rights against Manchester to National Indemnity Company. Manchester became insolvent and National Indemnity Company filed the present action against LIGA (which was established to provide a mechanism for payment of "covered claims" and to protect against the insolvency of an insurer) to compel it to assume that claim as a "covered claim" under LSA-R.S. 22:1375-1394.
LIGA contends that the claim is not a covered claim as that term is defined in the Revised Statutes of this state. We are compelled to agree.
The pertinent definition, which is definition (3) under LSA-R.S. 22:1379, is as follows:
"`Covered claim' means an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Part applies issued by an insurer, if such insurer becomes an insolvent insurer after September 1, 1970 and (a) the claimant or insured is a resident of this state at the time of the insured event; or (b) the property from which the claim arises is permanently located in this state. `Covered claim' shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise."
Thus, a claim does not fall within the statutory definition if it is an amount due any "insurer" as "subrogation recoveries or otherwise."
The present claim comes very close to being a subrogation in favor of a third person who pays the debt of another as that form of subrogation is found in LSA-C.C. art. 2160(1). However, the agreement is characterized by National Indemnity Company and Ursin in their written agreement as an assignment, and is thus not a subrogation *402 expressed by the parties, which expression the cited portion of the Codal article requires for a subrogation to fall under C.C. art. 2160(1).
The language of the agreement between National Indemnity Company and Ursin that provides for an assignment of Ursin's claim against Manchester is as follows:
"NOW THEREFORE, in consideration of the payment by National Indemnity Company for itself and for and on behalf of Edward T. Ursin, II of the first $5,000.00 of the total settlement of $75,000.00, I, Edward T. Ursin, II do hereby sell, assign, transfer, set over and deliver unto National Indemnity Company any and all claims which I have or may have against Manchester Insurance & Indemnity Company under that certain policy of primary liability insurance issued to Manchester Insurance & Indemnity Company up to the sum of $5,000.00, and I authorize National Indemnity Company, acting in its own name or in my name, but for its benefit, to assert a claim therefor against Manchester Insurance & Indemnity Company, or any other person, firm, organization, insurance fund, or agency who may be liable therefor, whether by litigation or otherwise, and I do hereby agree to execute any and all documents and papers which may be necessary now or in the future to prosecute said claim, and to pay over and deliver to National Indemnity Company any and all funds or payments received or to be received by me in connection therewith, up to the sum of the first $5,000.00 recovered."
The question then becomes one of whether the assignment, not being a subrogation, falls within the "or otherwise" phrase of the statutory definition of "covered claims." If it does, the claim is not a "covered claim."
In Black's Law Dictionary (4th Ed.) "otherwise" is defined as follows:
"In a different manner; in another way, or in other ways. Safe Deposit & Trust Co. of Baltimore v. New York Life Ins. Co., D.C., Md., 14 F.Supp. 721, 726."
The general usage of the word "otherwise" in the English language is similar. Webster's New World Dictionary defines "otherwise" as follows:
"1. in another manner; differently: as, she believed otherwise. 2. in all other points or respects: as, he is otherwise intelligent. 3. in other circumstances..."
Clearly, the assignment falls within the phrase "or otherwise" because even if the assigned claim is not payable as a subrogation recovery (because it is a claim acquired by assignment), then it is payable "in a different manner", i. e., by assignment. The statute as read under the certain meaning of the English language is unequivocal; "otherwise" clearly includes a claim or recovery arising from assignment.
It could be argued, conceivably, that "insurer" as used in the definition of "covered claim" means only an insurer acting in the role of insurer, and that National Indemnity Company received no premium to require it to pay the $5,000 which it put up to cover the claim against Manchester. However, it is quite apparent that National Indemnity Company entered into the assignment solely to avoid the risk of being held for a greater amount (up to the stated policy limit) if it permitted the Picolo suit to proceed to judgment. Thus, it acted in entering into the assignment agreement in its role as an insurer, because, if it had not been an insurer, it would not have entered into the assignment agreement. This rather obvious fact is further established by one of the paragraphs in the preamble to the assignment agreement, from which we quote:
"WHEREAS, it is in the interest of Edward T. Ursin, II, National Indemnity Company and Manchester Insurance & Indemnity Company that the claims of Rosalie and Arthur Picolo be settled in order to avoid additional costs of litigation, the uncertainities of litigation, and the possibility of a judgment for sums in excess of the insurance available to Edward T. Ursin, II..."
*403 Although we recognize that the statute which established the LIGA is to be liberally construed to protect against insolvent insurers (see LSA-R.S. 22:1378; Louisiana Insurance Guaranty Assn. v. Guglielmo, 276 So.2d 720 (La.App. 1st Cir. 1973), writ refused 279 So.2d 690 (1973)), we cannot construe the statute to include as a "covered claim" a claim that is unequivocally excluded by the clear language of that statute.
The policy behind the statutory exclusion might be questioned. A third person not an insurer would beyond any question be entitled to the $5,000 if it, rather than National Indemnity Company, had been assigned Ursin's claim. A further criticism of the policy behind the exclusionary language in the statute is found in the following paragraph in the trial court's reasons for judgment, under which it reached a result contrary to our interpretation of the statute:
"It really boils down to an interpretation of the statutes, presumably words and otherwise. I cannot see any prohibition against the insurance company paying the amount that is owed by an insolvent insurance company becoming assigned to that claim and then being able to present that claim against Insurance Guaranty Association. Certainly it would allow an excessive (sic) carrier to negotiate and taken an assignmentwould certainly benefit settlements. To require Insurance Guaranty Association to participate before there can be a settlement could and honestly in this instance would have postponed a settlement."
Certainly there are reasons not lacking in wisdom to urge that the statute be amended to remove or modify the exclusionary language. On the other hand, we are aware of the possibility that the legislature may have had sound reasons for desiring precisely the result which we have reached under this factual situation, that is, finding no coverage. In any event, establishment of legislative policy is a matter that addresses itself to the legislature, not to the courts. We cannot interpret the statute beyond its clear and unambiguous language.
We reverse that portion of the judgment of the trial court rendered in favor of National Indemnity Company, and dismiss its action, and affirm that portion of the judgment rendered in favor of Edward T. Ursin, II which portion of the judgment LIGA concedes should not be altered. All costs shall be paid by National Indemnity Company.
AFFIRMED IN PART, REVERSED IN PART.