412 So.2d 1285 (1981)
Edward T. URSIN, II and National Indemnity Company
v.
INSURANCE GUARANTY ASSOCIATION
No. 81-C-0850.
Supreme Court of Louisiana.
October 16, 1981.
On Rehearing April 5, 1982.
Rehearing Denied May 14, 1982.
Sera H. Russell, III, Calvin E. Hardin, Jr. of Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for plaintiffs-applicants.
Charles A. Schutte, Jr., of Owen, Richardson, Taylor, Mathews & Atkinson, Baton Rouge, for defendant-respondent.
LEMMON, Justice.
This litigation involves an attempt by an excess automobile liability insurer to recover from the Insurance Guaranty Association (LIGA) the amount of the primary limits owed by the insured and the bankrupt primary insurer, which the excess insurer paid as part of a compromise that it negotiated.
The tort victim of an automobile accident filed suit against (1) Edward Ursin, (2) Manchester Insurance and Indemnity Company, Ursin's primary liability insurer with $5,000 policy limits, and (3) National Indemnity Company, Ursin's excess insurer with policy limits of $95,000 in excess of the primary insurance limit. Manchester, because *1286 of financial difficulties, was unable to provide a defense for Ursin or to contribute to any settlement.
Ursin and National eventually compromised the suit for the total amount of $75,000, with National paying the entire amount, including the first $5,000 owed only by Ursin and Manchester. Ursin and the claimant executed separate assignments to National of their rights against Manchester, and Ursin authorized National, "acting in its own name or in my name", to assert the claim against Manchester and "any other person, firm, organization, insurance fund, or agency who may be liable therefor". Ursin also agreed to pay over to National any payments received in connection with the claim, up to $5,000.
Six months later Manchester was adjudged insolvent and placed in receivership. LIGA assumed responsibility for Manchester's outstanding obligations for covered claims, as defined in the Insurance Guaranty Association Law, R.S. 22:1375 et seq.
Ursin then filed this suit to recover the $5,000 owed by Manchester in the original litigation and paid by National in the compromise. After an exception of nonjoinder of an indispensable party, National was joined as party plaintiff.
Both sides filed motions for summary judgment, which were submitted on stipulated facts. The trial court rendered judgment in favor of National for $5,000 and in favor of Ursin for attorney's fees. LIGA appealed the judgment as to National only.
The court of appeal reversed the judgment in favor of National, holding that National's claim was not a covered claim because of the exclusion in R.S. 22:1379(3), which defines covered claims.[1] 396 So.2d 400 (La.App.). We granted National's application to review that judgment. 399 So.2d 619 (La.).
The purpose of the Insurance Guaranty Association Law is to avoid delays in payment and financial loss to policyholders and claimants when an insurer becomes insolvent. See R.S. 22:1376. National commendably accomplished that exact goal in this case, while at the same time furthering its own interest by completing a total compromise.
While conceding that Ursin would be entitled to recover the $5,000 if he (or someone on his behalf other than an insurer) had made the payment, LIGA contends that National (standing in Ursin's shoes as his assignee) is precluded from recovery by the literal terms of the statute. LIGA argues that the legislative intent of the Insurance Guaranty Association Law was to benefit policyholders and claimants, and not to provide relief to insurance companies which have paid claims that might otherwise qualify as covered claims.
The exclusion of insurers' claims in R.S. 22:1379(3) was clearly intended to prevent an insurer from paying a claim that it was obliged to pay under its policy and then recovering all or part of that payment from LIGA upon the insolvency of another insurer who was also obliged to pay the same claim under another policy. If recovery of such claims by insurers were allowed, then the insurer would receive a windfall at the expense of the Fund, without any benefit whatsoever to policyholders or claimants.
That reasoning, however, has no applicability to the situation in the present case, in which an insurer has paid a claim it was not obliged to pay and has done so for the benefit of its policyholder and the tort victim (although admittedly there was some benefit to the insurer). Under these circumstances *1287 National was not acting as an insurer within the contemplation of the Insurance Guaranty Association Law and should not be held to the literal terms of that provision of the law which prevents recovery of an otherwise covered claim by an "insurer".
Moreover, compromises are favored in law and are to be encouraged. The decision under review discourages compromises for no reason other than adherence to the literal terms of a statute whose purpose is not served by the decision.
We conclude that National, as assignee of Ursin's claim, should be entitled to recover the amount unquestionably due to Ursin and that the intent of R.S. 22:1379(3) was not to preclude such recovery under the circumstances of this case.
Accordingly, the judgment of the court of appeal is reversed, and the judgment of the trial court is reinstated.
BLANCHE, J., dissents for reasons assigned.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I agree with the court of appeal that National's claim is not a "covered claim" because of the exclusion in La.R.S. 22:1397(3) which provides:
`Covered claim' shall not include any amount due any ... insurer ... as subrogation recoveries or otherwise.
National is an insurer who was subrogated to the claim of Ursin. Hence, its claim is not a "covered claim." The statute could not be clearer.
Accordingly, I respectfully dissent.
BLANCHE, Justice (dissenting).
I respectfully dissent. The determining factor concerning whether LIGA should pay is whether the claim against it is by an insurer. R.S. 22:1379(3) prevents insurers from recovery against the fund regardless of the method by which the insurer acquires its claim. The court of appeal opinion was correct and we should not have granted the writ.

On Rehearing
CALOGERO, Justice.
We granted this rehearing to reconsider the question of whether an insured's excess automobile liability insurer can recover $5,000.00 from the Louisiana Insurance Guaranty Association (LIGA), the amount of the limits of the primary liability policy which the excess insurer paid on behalf of the insured because of the insolvency of the primary insurer, in order to effect a settlement with the injury claimant.
National Indemnity Company, an excess liability insurer with $95,000.00 policy exposure (because liable for damages over the $5,000.00 primary limits), was sued by an injured claimant. Also joined in the suit were Edward T. Ursin, II, National's insured, and Ursin's primary liability insurer, Manchester Insurance and Indemnity Company. Because Manchester became insolvent and because of National's exposure on the claim (along with its insured's exposure for the first $5,000.00 as well as any amount over $100,000.00) National effected a settlement with plaintiff for a total of $75,000.00, paying that amount in full and securing releases for itself and for its insured, Ursin. Coincident therewith, National took an assignment from Ursin of his claim against "Manchester Insurance and Indemnity Company, or any other person, firm, organization, insurance fund or agency who may be liable therefor."
The trial court ruled in favor of National, permitting them to recover the $5,000.00 from LIGA. The Court of Appeal reversed, disallowing the recovery.
Whether National can recover from LIGA turns on the narrow question of whether National's $5,000.00 claim is a "covered claim" under the Insurance Guaranty Association Law, that is, whether this is the type of claim the law requires that LIGA must pay. La.R.S. 22:1375 et seq. It is specifically provided within the Insurance Guaranty Association Law that a "`covered claim' shall not include any amount due any *1288 ... insurer ... as subrogation recoveries or otherwise."
On original hearing we reversed the Court of Appeal and allowed National to recover from LIGA. We held that because of the nature of National's claim it was a "covered claim"; it was not an "amount due any ... insurer ... as subrogation recoveries or otherwise."
We granted this rehearing to reconsider the question, being persuaded by the argument that the language in that provision is clear and unambiguous and that it specifically bars National's claim against LIGA.
Because insurer insolvencies were presenting a serious problem to the consuming public as well as the insurance industry, the Legislature in 1970 enacted the Insurance Guaranty Association Law. La.R.S. 22:1375 et seq. The LIGA Law was drawn with the help of a model act adopted by the National Association of Insurance Commissioners. Similar statutes have also been adopted in most other states.
The designated purpose of the Insurance Guaranty Association Law is "to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers. La.R.S. 22:1376. The LIGA fund is created to protect insureds and claimants in instances when the insurer becomes insolvent. The fund is administered by a non-profit, unincorporated legal entity, Insurance Guaranty Association, to which all member insurers ["all kinds of direct insurers except life, health and accident, title, disability, mortgage guaranty, and ocean marine insurance" (La.R.S. 22:1377)] shall be and remain members as a condition of their authority to transact business in the state. La.R.S. 22:1380.
The fund is supported by assessments against member insurers in amounts necessary to pay claims against insolvent insurers. The assessments are made in proportion to the net direct written premiums of the member insurers for the preceding calendar year. La.R.S. 22:1382(1)(c)(1). The member insurers in turn pass on the assessment costs to their insureds through premiums, which causes the effect of an insurer's insolvency to be borne by all insureds rather than only by the insolvent insurer's policyholders and/or claimants. Because of the added burden this places on policyholders generally, the Insurance Guaranty Association Law contains certain provisions to minimize these costs.
One such provision, La.R.S. 22:1386, entitled "Non-duplication of Recovery," provides essentially that a person having a claim against an insurer under any provision in another insurance policy is required first to exhaust his rights under such other policy. It further provides that any amount owed by LIGA on a covered claim shall be reduced by the amount of any recovery under that other insurance policy.
La.R.S. 22:1382(1)(a) limits LIGA's obligation on most claims to $50,000.00. (There is an exception to that limitation for claims on a workmen's compensation policy.)
Also, La.R.S. 22:1379(3), the provision involved in this case, defines "covered claim" (those claims LIGA will be obligated to pay) and specifically excludes from that definition "any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise."
While we have had occasion to consider La.R.S. 22:1386, the non-duplication of recovery provision,[1] this is the first case wherein we have been called upon specifically to review La.R.S. 22:1379(3), the provision directed at denying claims by insurers.
The precise question confronting us in this case is whether La.R.S. 22:1379(3), *1289 excluding from the definition of covered claims any amount due an insurer as subrogation or otherwise, bars from recovery against LIGA, National's claim as assignee of Ursin's rights.
Originally, we were of the view that the Legislative intent behind the enactment of La.R.S. 22:1379(3) was to prevent recovery or receipt of a "windfall" by an insurer who has paid a claim it was obligated to pay under its own policy. On that premise, National's claim would not be barred because National arguably had paid not an amount it was legally obligated to pay, but rather the $5,000.00 amount Ursin alone was obligated to pay. And further we felt that the public policy favoring compromise of claims would better be served by permitting National's recovery from LIGA in this instance.
Upon reconsideration, we have determined that our opinion on original hearing was incorrect. We now conclude that National's claim against LIGA is not a "covered claim" because of the clear and unambiguous language of La.R.S. 22:1379(3). National's claim against LIGA is indeed "any amount due any ... insurer ... as subrogation recoveries or otherwise."
LIGA argues that under the definition of legal subrogation contained in La.C.C. 2161, National's claim is that of a legal subrogee and thus not within the definition of a covered claim, because it is an amount due an insurer as a subrogation recovery. They rely on the case of Maryland Casualty Co., v. Marquette Casualty Co., 143 So.2d 249 (La.App. 4th Cir. 1962) in support of this argument. Maryland held that the excess insurer was legally subrogated to the insured's claim against the primary insurer under La.C.C. art 2161 where the excess carrier had paid the part of the claim owed by the primary carrier.
National, on the other hand, argues that their claim against LIGA is not a subrogation claim. They contend that their claim is based upon an assignment, in which Ursin assigned his rights against LIGA to National. National thus contends that their claim is a covered claim because it is based upon as assignment rather than subrogation.
Although LIGA's contention is not without possible merit, because we find that National's claim is excluded from the definition of a covered claim even if it is simply an assignment and not a subrogation, we find it unnecessary to consider whether the National claim is perhaps also one in subrogation.
As stated above, "any amount due any... insurer ... as subrogation recoveries or otherwise" is excluded from the definition of a covered claim. The language used is very broad and seems to encompass amounts due an insurer for any reason whatsoever.
The Court of Appeal relied on Black's Law Dictionary and Webster's New World Dictionary for a definition of "otherwise" and correctly concluded that "otherwise" generally means "in another or different manner." Therefore, an amount due an insurer as subrogation recoveries, or in a different manner, would be excluded from the definition of a covered claim. Clearly, National's claim falls within the phrase "subrogation recoveries or otherwise" because if the claim is not payable as subrogation recovery it is payable in a different manner, in this case, by virtue of an assignment.
Finally, National argues that the term "insurer" as used in the provision was only intended to mean an insurer who has paid a claim it was obligated to pay because of a policy it has issued. We do not find that such an interpretation is supported by the statute. The statute merely refers to any amount due any insurer. When National entered into the settlement for $75,000.00 it did so, at least in part, in order to avoid the risk of being held liable for a greater amount, up to its policy limits of $95,000.00. In settling the claim and simultaneously taking the assignment from Ursin, National was very much acting in its role as an insurer. As noted by the Court of Appeal, had National not been acting as an insurer it would not have agreed with the tort victim to pay the $75,000.00 while taking the assignment from Ursin.
*1290 Despite the fact that we resolve the legal issue before us favorably to LIGA because of what we construe to be a clear statutory provision, we nevertheless feel constrained to point out some problems with the scheme of the Insurance Guaranty Association Law. There are anomalies within it which preclude a cohesive overall scheme. The result, in terms of when LIGA will be required to pay, often may well depend upon the ingenuity of the parties involved.
For instance, in the present case, LIGA could have been made to bear this very loss had National and Ursin simply proceeded differently. Ursin, as an insolvent insured and a person whom the law was specifically designed to protect, could certainly have recovered the $5,000.00 from LIGA. The objective in the settlement might have been served by having National loan Ursin $5,000.00 while taking a promissory note. Furthermore, had any person other than an insurer paid the $5,000.00 and taken the assignment from Ursin, that person would also likely have been allowed to recover from LIGA. It is only because National is an insurer that its claim is barred by the statute.
Furthermore, an insurer (for instance, an automobile carrier who has paid a collision claim) with subrogation rights against a tortfeasor who has an insolvent insurer, could sue and collect from the tortfeasor insured and in the process expose LIGA to having to reimburse the tortfeasor insured for that sum. Unlike some other states our legislature has not seen fit to amend the act and include a provision that prohibits suit against the insured of an insolvent insurer by such a subrogated insurer.[2]
Similarly there are problems regarding the "Non-duplication of Recovery" provision, which affects the entitlement of claimants. La.R.S. 22:1386. Because this provision is not sufficiently explicit, and to avoid the circuitous claims that would effect the same result,[3] this Court has held that medical pay insurance, a collateral source of recovery to the claimant, does not bar the claimant's recovery from LIGA or reduce it, and this notwithstanding the "Non-duplication of Recovery" provision. Harris v. Lee, 387 So.2d 1145 (La.1980). Also, while not allowing claimant double recovery this Court in Hickerson v. Protective Nat. Ins. Co., 383 So.2d 377 (La.1980), nonetheless did allow the claimant to recover his injury claim fully against LIGA without first having to proceed against his uninsured motorist carrier. The reason apparently was that to require otherwise would simply encourage circuitous procedures resulting in LIGA's ultimate exposure for the same loss. (For instance, the UM carrier might pay the claimant and recover from the tortfeasor, with the tortfeasor securing reimbursement thereafter from LIGA.) See also Billeadeau v. Lemoine, 386 So.2d 1359 (La.1980). Interestingly, other states, with similar provisions, have gone the other way, finding that the availability of payments from an uninsured motorist carrier barred or reduced recovery from LIGA under their "Non-duplication of Recovery" provisions. King v. Jordan, 601 P.2d 273 (Alaska 1979); Prutzman v. Armstrong, 579 P.2d 359 (Wash.1978).
Be that as it may, the question presented in this case is a simple one involving only La.R.S. 22:1379(3), and we have answered it simply; National is an insurer whose claim is barred because it is a "subrogation recover[y] or otherwise."
As succintly stated in the well reasoned opinion of the Court of Appeal:
Certainly there are reasons not lacking in wisdom to urge that the statute be amended to remove or modify the exclusionary language. On the other hand, we are aware of the possibility that the legislature may have had sound reasons for *1291 desiring precisely the result which we have reached under this factual situation, that is, finding no coverage. In any event, establishment of legislative policy is a matter that addresses itself to the legislature, not to the courts. We cannot interpret the statute beyond its clear and unambiguous language.
Therefore, we conclude that La.R.S. 22:1379(3), in excluding from the definition of a "covered claim" "any amount due any... insurer ... as subrogation recoveries or otherwise", is clear and unambiguous and bars National's claim against LIGA, notwithstanding that National's claim is based on the assignment by Ursin of his rights against LIGA.

Decree
For the foregoing reasons, we reverse our original opinion and affirm the Court of Appeal opinion which held that National Indemnity Company could not recover the $5,000.00 from the Insurance Guaranty Association.
ORIGINAL OPINION REVERSED; JUDGMENT OF THE COURT OF APPEAL REINSTATED.
LEMMON, J., dissents.
WATSON, J., dissents, holding that the original opinion was correct.
NOTES
[1] R.S. 22:1379(3) provides:

"As used in this Part:
* * * * * *
"(3) `Covered claim' means an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Part applies issued by an insurer, if such insurer becomes an insolvent insurer after September 1, 1970 and (a) the claimant or insured is a resident of this state at the time of the insured event; or (b) the property from which the claim arises is permanently located in this state. `Covered claim' shall not include any amount due any reinsurer, insurer, insurance pool or underwriting association, as subrogation recoveries or otherwise."
[1] We have considered R.S. 22:1386 in the following cases: Harris v. Lee, 387 So.2d 1145 (La.1980); Billeaudeau v. Lemoine, 386 So.2d 1359 (La.1980); and Hickerson v. Protective Nat. Ins. Co., 383 So.2d 377 (La.1980).
[2] In Florida, for example, the following provision was added to their statute in 1977:

Member insurers shall have no right of subrogation against the insured of any insolvent member. F.S.A. § 631.54(4).
[3] That is LIGA ultimately bearing the loss because required to reimburse the tortfeasor when the tortfeasor is sued by the claimant, notwithstanding that the claimant has previously recovered from his med pay insurer.