580 So.2d 931 (1991)
H & B CONSTRUCTION CO. OF LA., INC., Successor Corporation to H & B Marine, Inc.
v.
LOUISIANA INSURANCE GUARANTY ASSOCIATION.
No. 90-CA-1360.
Court of Appeal of Louisiana, Fourth Circuit.
April 16, 1991.
Rehearing Denied June 18, 1991.
Kevin D. Conner, Brian J. Waid, Bubrig & Waid, Buras, for plaintiff/appellee.
Thomas E. Balhoff, Judith R. Atkinson, Ben L. Day, Mathews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, for defendant/appellant.
Before GARRISON, ARMSTRONG and PLOTKIN, JJ.
PLOTKIN, Judge.
The dispute in the instant case revolves around the definition of "ocean marine insurance," *932 as it relates to the liability of defendant Louisiana Insurance Guaranty Association (LIGA). The trial court found that a commercial liability umbrella policy between plaintiff H & B Construction Company (H & B) and LIGA member, Integrity Insurance Co., which is now bankrupt, did not fall under the "ocean marine insurance" exemption under the statutes governing LIGA's liability, and ordered LIGA to pay $68,433.28 in Indemnity's stead. LIGA appealed; we reverse.

Facts
The underlying facts are simple. H & B paid $68,433.28 of a $568,433.28 federal court judgment in favor of an employee who recovered damages for personal injuries under the Jones Act. The $68,433.28 represented the amount in excess of the $500,000 limit in H & B's primary insurance. H & B sought reimbursement from LIGA based on Integrity's bankruptcy. It is uncontested that Integrity would have been liable for that amount under its policy with H & B, were it not for its insolvency.
LIGA denied the claim, arguing that the employee's recovery was based in "ocean marine insurance," which is excluded from LIGA coverage under LSA-R.S. 22:1377. H & B filed this suit on September 21, 1986; however, the case was not submitted to the court until March 1990. During the delay period, the legislature amended the pertinent statutes to clarify the term "ocean marine insurance." On the basis of stipulated facts and evidentiary documents, the trial court found that the policy between Integrity and H & B was "one indivisible policy," which embraced and provided excess coverage for all of H & B's underlying policies, regardless of their characterization as maritime or non-maritime in nature. The court concluded that the policy was thus "not an `ocean marine insurance' policy within the meaning of LSA-R.S. 22:1377."
LIGA appeals, asserting that the trial court erred in holding that the type of policy, rather than the kind of coverage, was the pertinent criterion for defining "ocean marine insurance." LIGA contends that the trial court applied jurisprudential standards which were overruled by 1989 legislative amendments to the LIGA statutes. In the alternative, it submits that the court erred in not reducing LIGA's pay-out dollar-for-dollar for the other insurance paid, under LSA-R.S. 22:1386(1).
The primary issues before the court are:
1) Whether the amendments to the LIGA statute, specifically LSA-R.S. 22:1377(B) and 22:1379(8), added by Acts 1989 No. 681 and No. 620, are retrospective in application,
2) Whether the law was correctly applied to the policy in question, and
(3) Whether LIGA is entitled to a set-off for amounts paid by the primary insurers against amounts it would pay in the stead of the bankrupt excess insurer.

Definition of "Ocean Marine Insurance"
Until 1989 "ocean marine insurance" was undefined in the Louisiana Insurance Code, and, in the absence of a clear statement by the legislature, its meaning was divined by the courts by analogy and custom. The Louisiana Supreme Court reviewed the various and sometimes contradictory definitions of "ocean marine insurance" in Deshotels v. SHRM Catering Services, Inc., v. Louisiana Insurance Guaranty Asso., 538 So.2d 988 (La.1989), when it accepted the following question for certification from the United States Fifth Circuit Court of Appeals:
Does this claim for maritime-related injuries, brought on the Standard Workmen's Compensation and Employers Liability policy with a marine endorsement, involve `ocean marine insurance' so as to be excluded, by virtue of La.R.S. 22:1377, from the coverage of the Insurance Guaranty Association Fund?
After a comprehensive review of cases involving "ocean marine insurance" and an examination of LSA-R.S. 22:1377 the court interpreted the limitations of that statute to apply to "different kinds of insurance policies, rather than different risks." Id. at 993. In application this was interpreted to mean that employers' liability policies which incidentally cover risks associated with maritime injuries were not "ocean marine *933 insurance." The court further stated that "`ocean marine' is used as a synonym for traditional marine insurance, that is, property insurance on hulls, freights and cargoes." Id. at 932.
Nine months later, the Supreme Court reviewed the case of Backhus v. Transit Casualty Co., 549 So.2d 283 (La.1989). Although factually similar, the court determined that the claim in force was an employer's protection and indemnity policy, rather than a worker's compensation policy. The Court applied industry standards and common usage, noted the inclusion of protection and indemnity insurance under the definition of "marine insurance" found in LSA-R.S. 22:6(13), and concluded that the term "ocean marine insurance" included protection and indemnity insurance. Id. at 289. Thus, the court concluded, the claim at issue fell within the exemption to LIGA protection. Id. The court took note of the incongruous results between Deshotels and Backhus and called for legislative clarification:
In the absence of more specific statutory definitions or statements authorizing expansive interpretation of Louisiana Insurance Guaranty Association coverage in spite of the statutory exclusions, we are unable to find the language susceptible of any different meaning; accordingly, resolution of this anomaly must rest with the legislature.
Id. at 292.
However, two months earlier, the Louisiana Legislature had addressed the question of the interpretation of and test for "ocean marine insurance," when it amended LSA-R.S. 22:1377, adding paragraph B by Acts 1989 No. 618 and No. 620, and LSA-R.S. 22:1379(8), by adding the following definition of "ocean marine insurance":
Insurance as defined in R.S. 22:6(13), except for inland marine, as well as any other form of insurance, regardless of the name, label or marketing designation of the insurance policy which insures against maritime perils or risks ... which are usually insured against by traditional marine insurances such as ... marine protection and indemnity ... including liability of the insured for personal injury, illness or death or for loss or damage to the property of the insured or another person.
The 1989 amendment of LSA-R.S. 22:1377, adding the following paragraph B:
The kind and coverage of insurance afforded by any policy shall be determined solely by the coverage specified and established in the provisions of that policy, regardless of any name, label, or marketing designation of the policy.
The jurisprudential history and response of the legislature support the inference that these amendments were intended to interpret and clarify the law. La.C.C. art. 6, which addresses the retroactive effect of laws, clearly provides that interpretive laws are to be given retroactive effect absent legislative expression of contrary intent. We believe that this was the intent here, and hold that the provisions of the LIGA statutes, as amended by the sections specified above, are retroactive in effect and should have been applied by the trial court in this case.
We are aware of the analysis proferred by the court in Sifers v. General Marine Catering Co. v. First State Insurance Co., 892 F.2d 386 (5th Cir.1990). Because that case was the source of the question certified in Deshotels, the court determined that it was bound by the Deshotels analysis and held that the "kind of policy" test was controlling, and "the law of this circuit." Id. at 391. In dicta, the court expressed doubt that the amended statutes were intended as a legislative rejection of the Deshotels analysis, and inferred that the Supreme Court might not conclude that its decision in Deshotels had been legislatively overruled, because the Court used Deshotels' "kind of policy" test in Backhus, decided two months after the legislative enactment of the above changes in the LIGA statute, but before the effective date, Jan. 1, 1990. Id. at 392. The Fifth Circuit, deciding Sifers "on the authority of the state supreme court's decision in Backhus," found it unnecessary to consider whether the amendments to the LIGA statute were retroactive in effect. Id. at 391.
*934 However, the statute is clear and unambiguous that the "kind and coverage of the insurance ... shall be determined solely by the coverage specified and established in the provisions of that policy regardless of any name, label or marketing designation for the policy." The supreme source of law is legislation as the expression of legislative will. La.C.C. art. 1 and art. 2. When legislation is "clear and unambiguous, no further interpretation may be made in search of the intent of the legislature." La.C.C. art. 6. We will therefore look to the statute to determine the extent of LIGA's liability.

LIGA's Liability
Having decided that the kind of coverage is the determining factor for deciding whether a policy is exempt from LIGA coverage because it is "ocean marine insurance," we conclude that the trial judge was in error when he held that the excess liability policy at issue here is one indivisible policy which cannot be identified according to the underlying policy for which it provides excess coverage. Looking to the language of the statute, it is clear that the legislature intended protection and indemnity insurance to be considered "ocean marine insurance" when associated with risks commonly associated with maritime activity. Moreover, both parties admit that the policy in question is protection and indemnity insurance; thus it is clearly "ocean marine insurance" under the Backhus decision.
Reference to the special jury interrogatory reveals that 90 percent of the employee's damages in the instant case were attributed to Jones Act negligence and the remaining 10 percent were attributed to "unseaworthiness." Thus, both categories of negligence fall under the "ocean marine insurance" exemption to LIGA liability. Therefore, we find that H & B is not entitled to coverage from LIGA for the amount owed by the insolvent insurer, Indemnity Insurance Co., and thus it is not entitled to reimbursement of the $68,433.28 it paid to satisfy the judgment against it.
Having concluded that LIGA is not responsible for reimbursement for the amount which would have been paid by the bankrupt Indemnity insurer because the coverage was "ocean marine insurance," we find it unnecessary to consider the validity of LIGA's demand for a set off for amounts paid by the primary insurer.

Conclusion
For the above and foregoing reasons, the trial court judgment ordering LIGA to reimburse H & B $68,433.28 for the amount it paid its injured employee is reversed.
REVERSED.

ON MOTION FOR REHEARING
PER CURIAM.
Appellant H & B Construction Co. of Louisiana, Inc. (H & B) has filed an application for rehearing, claiming that this court's decision, holding that the 1989 amendments to LSA-R.S. 22:1377 and LSA-R.S. 22:1379 are to be applied retroactively, results in an unconstitutional impairment of the obligations between H & B and Integrity Insurance Co., as set out in the 1982 insurance contract between the two. H & B argues that the court's decision, which denied coverage for protection and indemnity insurance under the "ocean marine" exclusion to LIGA coverage, impairs its vested rights under the contract.
We disagree. The 1982 contract of insurance between H & B and Integrity Insurance Co. did not give H & B any vested rights to coverage by LIGA. As a result of that contract, H & B gained rights against Integrity only. When Integrity became insolvent, LIGA became responsible only for coverage for policies not excluded by the revised statutes governing LIGA coverage.
LIGA coverage is governed by LSA-R.S. 22:1375 et seq. The purpose of the LIGA, according to LSA-R.S. 22:1376, is "to provide a mechanism for the payment of covered claims under certain insurance policies." (Emphasis added.) Specifically excluded from coverage under LSA-R.S. 22:1377, since 1970, is "ocean marine insurance," among other things. Additionally, as the Louisiana Supreme Court noted in Backhus v. Transit Casualty Co., 549 *935 So.2d 283 (La.1989), protection and indemnity insurance was included in the definition of "marine insurance" found in LSA-R.S. 22:6(13) since as early as 1948. Id. at 289. The 1989 legislative amendment adding LSA-R.S. 22:1377(B), which specifically defines "ocean marine insurance," states specifically that all types of "marine insurance" fall under the definition. Therefore, the protection and indemnity insurance policy at issue in the instant case has been excluded from LIGA coverage for more than 40 years. The 1989 amendments did not change the law; they simply clarified the terms involved, and thus must be applied retroactively.
Nevertheless, H & B argues that prior to 1985, courts had a "long standing tradition to not exclude liability coverage under an ocean marine protection and indemnity policy." Even if that assertion is true, that fact would not give H & B any vested rights to coverage from LIGA. The Louisiana Supreme Court determined in Backhus that the legislature intended such insurance to be excluded. H & B had no contracts with LIGA. LIGA coverage is governed by the statutes which established the association. Although generally those statutes must be construed liberally in favor of policyholders, they cannot be construed to include a claim unequivocally excluded by the clear language of the statute. Ursin v. Insurance Guaranty Ass'n, 396 So.2d 400, 403 (La.App. 1st Cir.1981), aff'd 412 So.2d 1285. Therefore, H & B's application for rehearing is denied.