## CIRCUIT COURT OF THE CITY OF RICHMOND

JW&L Company, Inc.

v.

Virginia Property and
Casualty Insurance
Guaranty Association

February 3, 1992

Case No. LM-1953–1

BY JUDGE MELVIN R. HUGHES, JR.

There are presently before the court the parties' cross motions for summary judgment based on stipulated facts. The primary question the motions present is whether the defendant Virginia Property and Casualty Insurance Guaranty Association (Guaranty Association or Fund) is liable for subrogation claims brought against plaintiff (JW&L) by two insurers.

The factual background according to the stipulation is as follows. In May, 1982, pursuant to a contract, JW&L repaired and partially rebuilt a slate refuse bin located in Vansant, Virginia, owned by Island Creek Coal Company (Island Creek). About three months after construction, the bin collapsed. The collapse damaged Island Creek's property and disrupted business operations. Island Creek had property and casualty insurance with Piper Indemnity Company (Piper) and American Home Insurance Company (American Home) and filed claims to cover the damages. Island Creek, Piper, and American Home agreed that the total loss was $812,106.00. Piper agreed to pay Island Creek $325,436.00 of the loss, and American Home agreed to pay $223,299.00 leaving $263,371.00 for which Island Creek did not receive payment.

In February, 1984, Island Creek sued JW&L for the damages in the United States District Court for the Western District of Virginia. Piper and American Home were partial subrogees to Island Creek's

claim against JW&L for the part payments they paid Island creek for the loss. JW&L was insured by Integrity Insurance Company (Integrity) for the loss claimed against it by Island Creek. Integrity and JW&L agreed to settle the case brought by Island Creek for $600,000.00 with Piper to receive $240,600.00 of the settlement proceeds, American Home $165,000.00, and Island Creek $194,400.00. Later, Integrity was declared insolvent and did not pay any part of the $600,000.00 settlement. On June 22, 1988, Island creek filed suit against the Guaranty Association to enforce a claim for $194,400.00 against Integrity and JW&L. This claim was later compromised and settled.

After the Association failed to pay the claims of Piper and American Home, JW&L filed this suit to obtain funds to pay part of Piper's and American Home's subrogation claims against it. In other words, JW&L seeks payment for Piper's and American Home's subrogation claims against it for monies paid Island Creek because Integrity, JW&L's insurer, is insolvent and unable to pay the claims.

The purpose of the Guaranty Association created by law in 1970 in the Guaranty Act is described in § 38.2–1600, the statement of purpose:

> The purpose of this chapter is to establish an association that shall provide prompt payment of *covered claims* to reduce financial loss to claimants or policyholders resulting from the insolvency of an insurer. (Emphasis added.)

All insurance companies doing business in Virginia pay into the Fund for the payment of "covered claims." Thus, only "covered claims" are due for payment by the Guaranty Association. Covered claims are defined as follows:

> "Covered claim" means an unpaid claim, including one for unearned premiums, which arise of and is within the coverage and not in excess of the applicable limits of a policy covered by this Chapter and issued by an insurer who has been declared to be an insolvent insurer. The claimant or insured shall be a resident of this Commonwealth at the time of the insured loss or the property from which the claims arises shall be permanently located in this Commonwealth. *"Covered claim" shall not include any amount payable to reinsurer, insurer, insurance pool*

or underwriting association, as subrogation recoveries or otherwise. (Emphasis supplied.)

The Fund contends that in essence JW&L's claim is an attempt to acquire subrogation payment for insurers, something the statute forbids. It also suggests that there is no indication that Piper and American Home have an intention of pursuing their subrogation claims against JW&L and that, if they were to do so, the Guaranty Act necessarily prohibits any such recovery by them from JW&L. It argues further that Piper and American Home, as association member insurers contributing to the Fund, are barred from recovering losses caused by insureds from other insured members which are insolvent. Even if the court finds JW&L's claim is a covered claim, Piper and American Home have lost any right to subrogation by virtue of the exhaustion and reduction requirements in § 38.2–1610. JW&L, while admittedly attempting to get payment to pass on to its subrogation claimants, Piper and American Home, contends that if the Guaranty does not pay its claim, the very purpose of its existence, protection of insured whose insurers are insolvent, would be defeated.

There is no direct authority in the two cases decided thus far by the Virginia Supreme Court involving the Guaranty Association providing an answer on how a claim of this type is to be decided.[1] There is also the matter of the weight of authority against JW&L's position here. *White v. Huntington Beach*, 187 Cal. Rptr. 879 (1983); *Fireman's Fund Insurance Co. of Wisconsin v. Pitco Frialator Company, Inc.*, 427 N.W.2d 417 (1988); *Kinny v. Leaman*, 436 N.E.2d 996 (Mass. App. 1982); *Combs v. The Hartford Insurance Company*, Civ. Action 88–0113-H (W.D. Va. 1988) (opinion by Magistrate B. Waugh Crigler).

Recognizing this, JW&L observes there are three views, two of which are against it, although these can be distinguished. It urges the court to take a third approach a Louisiana court took in *Thibodeaux v. Landry*, 553 So. 2d 1083 (La. App. 3 Cir. 1989). In *Thibodeaux*, plaintiffs brought an action arising out of an automobile accident against the driver, his employer, Shoreline, and their insurer. During

---

[1] Northland Insurance Company v. Virginia Property and Casualty Insurance Guaranty Association, 240 Va. 115 (1990); Virginia Property and Casualty Guaranty Association v. International Insurance Company, 238 Va. 702 (1989).

the pendency of the suit, the defendant's insurer was declared insolvent which caused plaintiffs to add as a defendant the Louisiana Insurance Guaranty Association (LIGA). Shoreline cross-claimed LIGA. As here, the argument was made that Shoreline's claim against LIGA was actually an insurer's subrogation claim for monies paid by Farm Bureau, an uninsured motorist insurer with whom the plaintiffs had settled. The court, citing the case of *Ursin v. Insurance Guaranty Association*, 412 So. 2d 1285 (La. 1982), allowed the claim. In *Ursin*, the court denied a claim by an insurer as a "subrogation claim or otherwise" under Louisiana law but expressed that there was a loophole in the law. The *Thibodeaux* court found that the facts before it fit that loophole. The court found that since Shoreline had settled the subrogation claim with Farm Bureau and gotten releases, its claim was not for an insurer and it could seek recovery from LIGA. The *Thibodeaux* court, quoting the trial court with approval, saw the situation this way:

> Although the claim presently at issue seems on its face to be a back door method of recovery, it is apparently a good example of "ingenuity." The record reflects a lump sum cash payment to Farm Bureau by Shoreline for a release of all claims. Shoreline's claim against the LIGA is thus clearly one by an individual tortfeasor with an insolvent insurer. This is the exact situation recognized as a loophole by the Supreme Court. The legislature has not amended the statute to prohibit suits against the insured in this situation. (412 So. 2d at 1290.)

It is clear that the facts that obtained in *Thibodeaux* do not obtain here. JW&L has not satisfied the claims of Piper and American Home and gotten releases of subrogation rights. Insurers here, unlike in *Thibodeaux*, will directly benefit from the tortfeasor's suit against the Guaranty Association. While this distinction, as JW&L points out, may seem of no real import in light of JW&L's position that it has already obligated itself to pay Piper and American Home, it is nonetheless evident that payment by the Guaranty Association will be payable to insurers on their subrogation claims. What effect the Guaranty Act would have on subrogation claims of Piper and American Home brought against JW&L in a lawsuit is not decided. It is enough that by the agreed facts here, the present claim is brought and meant to provide payment to those insurers as subrogation claims.

This is the very thing not permitted as a covered claim, and on this ground, JW&L's claim must fail. Any other remedy to the present or similar facts like those posed in *Thibodeaux* is best addressed by the General Assembly, not the court. Having come to this conclusion, it is not necessary to decide the other grounds urged by the Guaranty Association as reasons to deny JW&L recovery.

Accordingly, Mr. Starr can prepare and send in a draft order for summary judgment in Guaranty Association's favor noting exceptions.