WOODARD, Judge.
Appellant, Louisiana Insurance Guaranty Association (LIGA), appeals the trial court’s judgment in favor of appellees, State Farm and Betty Clakley, in this duty to defend case.
PROCEDURAL BACKGROUND
On July 5, 1990, vehicles driven by plaintiff, Chris Townsend, and defendant, Betty Clakley, collided at the intersection of East Fifth Street and Kaiser Avenue in Natchi-toches. Townsend filed suit against Betty Clakley and his uninsured motorist carrier, State Farm. State Farm filed a cross claim against Betty Clakley and a third party demand against her alleged insurer, Automotive Casualty Insurance Company. Betty Clakley answered the Townsend petition and filed a reconventional demand against Automotive Casualty, alleging insurance coverage and a breach of the duty to defend. She also filed a third party demand against Assurance, Ltd., a premium finance company, alleging they were at fault in canceling her insurance policy with Automotive Casualty. Automotive Casualty then filed a third party demand against Assurance, Ltd.
Prior to trial, State Farm settled Townsend’s uninsured motorist and medical payment claims and was subrogated to his rights against Betty Clakley and Automotive Casualty.
The trial court found Ms. Clakley ran the red light and granted judgment in favor of Townsend against Betty Clakley for $13,-240.00 subject to a credit to State Farm for payments made to Townsend. The trial court also found Ms. Clakley’s insurance policy was in effect at the time of the accident and granted judgment in favor of State Farm on its cross-claim against Betty Clakley and Automotive Casualty Insurance Company in the amount of $9,970.15. The trial court further granted judgment in favor of Betty Clakley against Automotive Casualty Insurance Company for the sum of $10,000.00 subject to a credit to State Farm for pay *1251 ments made to Townsend. The trial court also awarded Betty Clakley an additional $4,000.00 against Automotive Casualty Insurance Company for attorneys fees for failure to defend. The third party demands against Assurance, Ltd. were dismissed.
Automotive Casualty appealed and was subsequently placed in liquidation by East Baton Rouge Parish District Court. Consequently, the Louisiana Insurance Guaranty Association filed, and was granted, a motion to substitute itself as the proper party defendant in place of Automotive Casualty under the Louisiana Insurance Guaranty Association law, LSA R.S. 22:1376, et seq.
The primary issues at trial and on appeal involve whether or not, at the time of the accident, Ms. Clakley was insured under a policy of insurance issued by Automotive Casualty Insurance Company and whether Assurance, Ltd., a premium finance company, erroneously canceled her insurance policy.
FACTS
On October 19,1989, Betty Clakley went to Crows Bureau Insurance, Inc. in Natchitoch-es and bought an automobile insurance policy issued by Automotive Casualty Insurance Company. The annual premium was $203.00 which Ms. Clakley chose to finance through Assurance, Limited, a premium finance company. Under the terms of the premium finance agreement, Ms. Clakley was required to make a cash down payment of $95.00 and then nine monthly payments of $16.82. The agreement contained a power of attorney. The agreement was executed at Crow’s Bureau Insurance, Inc. and was forwarded to Assurance who in turn paid Automotive Casualty for the policy. Assurance forwarded to Ms. Clakley a letter and payment book advising her of the dates her payments were due. The terms of the policy period were from October 19, 1989 to October 19, 1990, with limits of $10,000.00 per person and $20,-000.00 per accident for bodily injury damages and $10,000.00 for coverage for property damage.
In the first six months the policy was in effect, Ms. Clakley made five late payments. As a result of these late payments, several notices of cancellation were sent to Ms. Clak-ley. These defaults were cured by Ms. Clak-ley sending payment within ten days of the date the notice was sent.
On May 22, 1990, Assurance mailed a notice of cancellation to Betty Clakley for which she acknowledged probable receipt. The notice of cancellation stated in pertinent part:
NOTICE OF CANCELLATION
You are hereby notified that 10 days from the date this notice was mailed those policies listed in the schedule of policies below will be cancelled because you failed to pay the installment due. To avoid cancellation, the past due installment must be paid by the cancellation date shown below.
^CANCELLATION DATE 6/02/90**
Ms. Clakley purchased two money orders on May 25, 1990, one made payable for $64.00 intended to go to Farmers Home Administration (FHA) for her home mortgage, and one for $16.82 for the past due premium installment. However, Ms. Clakley inadvertently made out the money orders to FHA for $16.82 and to Assurance for $64.00. Ms. Clakley then accidentally mailed to Assurance the money order intended for her mortgage payment and mailed to FHA the money order intended as insurance payment. On May 30, 1990 Assurance called Ms. Clakley and told her they had received the $64.00 money order. Assurance’s computer system automatically notified the data operator that this was an improper amount. Assurance agreed to exchange money orders with FHA pursuant to Ms. Clakley’s request. FHA and Assurance mailed the money orders to one another, however, Assurance did not receive its $16.82 payment by June 2, 1990. Consequently, on June 4, 1990, Assurance sent Automotive Casualty a notice to cancel the Clakley policy.
On June 8,1990 Assurance mailed a notice to Ms. Clakley stating that her policy had been cancelled on June 2, 1990 for failure to *1252 pay the installment due on May 19, 1990. Both of the June 8, 1990 and June 26, 1990 notices stated in pertinent part:
Dear Betty Clakley:
Please be advised that your Automobile insurance policy through Automotive Casualty Company was cancelled on June 2, 1990 because you failed to pay the installment due 5/19/90. All monies received after the cancellation date will be applied to the balance on your premium finance agreement #262143.
If the return premium received is greater than that owed, we will return the excess to you. If the return premium received is less than that owed, we will bill you for same.
Automotive Casualty paid return premiums to Assurance on June 26, 1990. On June 30, 1990 Ms. Clakley’s insurance agent, Crows Bureau Insurance, also mailed Ms. Clakley a copy of the cancellation notice from Automotive Casualty. Ms. Clakley paid premium payments of $16.82 to Assurance on June 27, 1990 and July 12, 1990 respectively. Assurance mailed her the balance of her return premiums on July 12, 1990.
CANCELLATION OF POLICY
LIGA asserts the trial court erred in finding the policy issued by Automotive had not been effectively cancelled prior to Ms. Clak-ley’s accident on July 5, 1990.
LIGA argues that Automotive Casualty complied with all statutory requirements necessary to cancel a policy of insurance pursuant to LSA R.S. 9:3550 and urges that, according to LSA R.S. 9:3550(G)(3)(c), upon mailing of the unearned premiums, Automotive Casualty was discharged from liability under the insurance contract, as the policy was effectively canceled and not in force on July 5, 1990, the date of the accident.
LSA R.S. 9:3550 is the statute governing insurance premium finance companies. LSA R.S. 9:3550(G)(3) governs the cancellation of insurance contracts upon default and provides:
(3)(a) Ten days after notice of cancellation has been mailed to the insured, or fourteen days when notice is mailed from outside of this state, if the default has not been cured, the insurance premium finance company may thereafter effect cancellation of such insurance contract or contracts by mailing to the insurer a copy of the notice of cancellation together with a statement certifying that:
(i) The premium finance agreement contains a valid power of attorney as provided in paragraph (1) above;
(ii) The premium finance agreement is in default and the default has not been timely cured;
(iii) Upon default, a notice of cancellation was mailed to the insured as provided in Paragraph (2) above, specifying the date of mailing by the premium finance company to the insured; and
(iv) Copies of the notice of cancellation were mailed to all persons shown by the premium finance agreement to have an interest in any loss which may occur thereunder, specifying the names and addresses of any governmental agencies, mortgagees or third parties to whom the insurance premium finance company has sent notice of cancellation.
(b) Upon receipt of such notice of cancellation and statement from the premium finance company, the insurer shall be entitled to consider that cancellation of the insurance contract or contracts has been requested by the insured but without requiring the return of the insurance contract or contracts and the insurer may proceed to cancel such contract or contracts as provided in R.S. 22:637. The effective date of cancellation shall be as of 12:01 A.M. on the tenth day after the date of mailing of the notice of cancellation as shown in said statement furnished to the insurer by the premium finance company.
(c) The receipt of such notice and statement by the insurer shall create a conclu *1253 sive presumption that the facts stated in said notice and statement are correct, that the insurer is entitled to rely on such facts and that the cancellation of the insurance contract or contracts is concurred in and authorized by the insured. No liability of •any nature whatsoever either in favor of the insured, any governmental agency, mortgagee or third party shall be imposed upon the insurer as a result of any misstatement of fact contained in said notice of cancellation or statement furnished by the insurance premium finance company to the insurer, or as result of failure by the insured, any governmental agency, mortgagee or third party to receive the notice of cancellation required by Paragraph (2) above, or as a result of failure of the insurance premium finance company to comply with any of the requirements of this Subsection. Upon mailing of any unearned premium to the insurance premium finance company as soon as practicable following such cancellation, the insurer shall be fully discharged from all liability under the insurance contract or contracts for any loss occurring subsequent to the effective date of cancellation.
Assurance did complete all the procedural steps necessary to cancel Ms. Clakley’s insurance. However, the steps set forth in LSA R.S. 9:3550(G)(3) presuppose a default on the premium finance contract. We find Ms. Clakley did not default on the contract.
After Ms. Clakley received the ten day notice of cancellation on May 25, 1990 informing her that her insurance would be canceled if she did not make payment by June 2, 1990, Ms. Clakley sent Assurance a money order for $64.00, made to their order, which they received on May 30, 1990. At that point, Ms. Clakley cured any default. Assurance thus received payment within ten days of the notice of cancellation.
Furthermore, after a thorough review of the record, we find Assurance is estopped from asserting that Ms. Clakley’s policy was canceled.
“Equitable estoppel arises where a person, by his acts, representations, or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence induces another to believe that certain facts exist, and the other person rightfully relies and acts on such belief, and will be prejudiced if the former is permitted to deny the existence of the such facts.”
Travelers Ins. Co. v. United States Fidelity and Guaranty Co., 168 So.2d 439 (La.App.3d Cir.1964). See also Self v. Walker Oldsmobile, 614 So.2d 1371 (La.App. 3d Cir.1993). Assurance led Ms. Clakley to believe that they would accept the $16.82 payment from FHA when they agreed to switch payments. Ms. Clakley relied on this agreement as assurance that her insurance would not be canceled. Had she known there was a risk of default in this arrangement, she could have chosen another method of paying—such as mailing another money order overnight or instructing Assurance to apply the entire $64.00 payment to her account. Because Ms. Clakley detrimentally relied on Assurance’s agreement to switch payments, Assurance is estopped from asserting that her policy is canceled.
For the foregoing reasons, we find no error by the trial court in finding there was not a valid cancellation of Ms. Clakley’s policy and that Automotive, thus, had a duty to defend Ms. Clakley in the instant lawsuit.
ATTORNEYS FEES
LIGA next contends the trial court erred in awarding Ms. Clakley attorneys fees. LIGA urges it cannot be held liable for pre-insolvency attorneys fees under LSA R.S. 22:1379 which provides:
“covered claim shall not include any claim based on or arising from a pre-insolvency obligation of an insolvent insurer, including but not limited to contractual attorneys fees and expenses, statutory penalties and attorneys fees ...”
This language was added in September, 1990. Prior to September, 1990, there was no pro *1254 vision limiting LIGA’s exposure to attorneys fees. Appellees argue that because the accident occurred on July 5, 1990, prior to the 1990 amendment, the award of attorneys fees was proper.
In First National Bank of Houma v. Bailey, 588 So.2d 559 (La.App. 3d Cir.1991), this court overturned the trial court’s 1989 judgment awarding attorneys fees and held that LIGA was not responsible for attorneys fees. The facts of the case occurred prior to the 1990 amendment to LSA R.S. 22:1379(3). The court in First National, supra, relied on the ease of Breaux v. Klein, 572 So.2d 656 (La.App. 5th Cir.1990), writ denied 573 So.2d 1140 (La.1991) and quoted it approvingly:
“We fear that to expose LIGA to the possible thousands of claims for arbitrary and capricious non-payment by insolvent insurers, particularly in the wake of Champion’s demise, could potentially threaten the very existence of the insurance guaranty fund which has as its avowed statutory purpose the avoidance of excessive delay in payment and the avoidance of financial loss to claimants or policyholders. We note further that under the 1990 amendment to R.S. 22:1379 statutory penalties and attorney fees are specifically excluded from a covered claim.”
We therefore find LIGA is not responsible for attorneys fees awarded to Ms. Clakley and reverse that portion of the trial court’s judgment.
SUBROGATION
LIGA’s final contention is that State Farm’s third party demand against Automotive should be set aside because an insurer cannot be subrogated to claims against LIGA. LSA R.S. 22:1379(3)(b) provides:
(b) “Covered claim” shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise. In addition, the insured of an insolvent insurer shall likewise not be liable for any subrogation claim asserted by any reinsurer, insurer, insurance pool, or underwriting association to the extent of the applicable liability limits previously provided to such insured by the insolvent insurer.
Any amount due any insurer as subrogation recoveries or otherwise is excluded from the definition of a covered claim. Davis v. Southern Gulf Transport Inc., 493 So.2d 729 (La.App. 2 Cir.1986) citing Ursin v. Insurance Guaranty Association, 412 So.2d 1285 (La.1982). As Automotive is now an insolvent insurer managed by LIGA, State Farm may not recover these subrogation payments from LIGA. Thus, that part of the judgment awarding State Farm recovery is reversed.
DECREE
For the reasons assigned above, the judgment appealed is affirmed in part and reversed in part. Costs of this appeal are assessed equally to appellant, Automotive Casualty Insurance Company (Louisiana Guaranty Insurance Company), and appellee, State Farm Insurance Company.
AFFIRMED IN PART, REVERSED IN PART.